## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENOISE M. CALLAHAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| | ) |
| v. | ) |
| | ) |
| SCOTT BLEDSOE, M.D., | ) |
| **Serve Personally at:** | ) |
| Associates in Family Medicine | ) |
| 8411 E. 21st St., Ste. 200 | ) |
| Wichita, KS 67206 | ) |
| | ) |
| WESLEY MEDICAL CENTER, LLC, | ) |
| d/b/a Wesley Woodlawn Hospital & ER | ) |
| **Serve Registered Agent at:** | ) |
| STK Registered Agent, Inc. | ) |
| 6201 College Blvd., Ste. 500 | ) |
| Overland Park, KS 66211 | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

**COMES NOW** the plaintiff, Jenoise M. Callahan ("Jenny Callahan"), and for her cause of action against the defendants, alleges and states as follows:

1. Plaintiff Jenny Callahan is a citizen and resident of the City and County of Denver, Colorado.

2. Defendant Wesley Medical Center, LLC d/b/a Wesley Woodlawn Hospital & ER (hereinafter "Wesley") is a Delaware limited liability company that at all relevant times was registered and qualified to do business and conducted and continues to conduct business in the state of Kansas. Defendant Wesley may be served through its registered Kansas agent, STK Registered Agent, Inc., 6201 College Boulevard, Suite 500, Overland Park, Kansas 66211.

3. Defendant Wesley at all times relevant owned and operated a medical facility known as Galichia Heart Hospital or Wesley Woodlawn Hospital & ER, located at 2610 N. Woodlawn, Wichita, Kansas 67220.

4. Defendant Scott Bledsoe, M.D., (hereinafter "Bledsoe") is a physician licensed to practice medicine in the state of Kansas. Defendant Bledsoe is a citizen and resident of the state of Kansas. Defendant Bledsoe can be served at his place of employment and primary place of practice, Associates in Family Medicine, 8411 E. 21st Street N, Suite 200, Wichita, Kansas 67206.

5. The United States District Court for the District of Kansas has original jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332, as this cause of action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. The United States District Court for the District of Kansas has personal jurisdiction over defendant Wesley because defendant Wesley is registered and qualified to do business in Kansas and has a registered agent for service of process in Kansas. Further, defendant Wesley has substantial, systematic and continuous contact with Kansas such that the exercise of personal jurisdiction over defendant Wesley is fair, just and appropriate.

7. The United States District Court for the District of Kansas has personal jurisdiction over defendant Bledsoe because he is a citizen and resident of the state of Kansas.

8. Venue is proper in the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2), as the medical care, management and treatment occurred in Kansas.

9. On Thursday, May 15, 2014, at approximately 1:04 p.m., plaintiff Jenny Callahan was admitted to the emergency department of defendant Wesley with complaints of headache

and loss of vision. Plaintiff was transported to the emergency department of defendant Wesley by her brother, Jim Callahan.

10. Plaintiff had previously been diagnosed with pseudotumor cerebri and had previously suffered episodes of headache, vision disturbances and vision problems related to the pseudotumor cerebri.

11. While plaintiff was a patient of the emergency department of defendant Wesley from approximately 1:04 p.m. to her discharge at 5:03 p.m. on May 15, 2014, she was under the medical care, treatment and management of her attending physician, defendant Bledsoe.

12. While plaintiff was a patient of the emergency department of defendant Wesley from approximately 1:04 p.m. to her discharge at 5:03 p.m. on May 15, 2014, there was a physician-patient relationship between defendant Bledsoe and plaintiff Jenny Callahan.

13. While plaintiff was a patient of the emergency department of defendant Wesley from approximately 1:04 p.m. to her discharge at 5:03 p.m. on May 15, 2014, she was under the nursing and hospital care, treatment and management of defendant Wesley and its healthcare provider agents, servants and employees, including but not limited to Ashley Snyder, RN, and Brandelein Stefonek, RN.

14. While plaintiff was a patient of the emergency department of defendant Wesley from approximately 1:04 p.m. to her discharge at 5:03 p.m. on May 15, 2014, there was a hospital-patient relationship between defendant Wesley and plaintiff Jenny Callahan.

15. Defendant Bledsoe's principal admitting diagnosis of plaintiff's condition when she was admitted as a patient of the emergency department of defendant Wesley was pseudotumor cerebri. Defendant Bledsoe's primary discharge impression/diagnosis when he discharged plaintiff from the emergency department of defendant Wesley was pseudotumor cerebri.

16. At the time she was discharged as a patient of the emergency department of defendant Wesley, plaintiff's headache and loss of vision had not improved from the time of her admission.

17. When he discharged plaintiff from the emergency department of defendant Wesley, defendant Bledsoe provided her with a written prescription for Diamox Sequels (acetazolamide) 500 Mg to be taken one by mouth, two times per day, and for Lasix (furosemide) 40 Mg to be taken one by mouth each day.

18. Plaintiff filled the prescriptions for Diamox and Lasix following her discharge from the emergency department of defendant Wesley and took the Diamox and Lasix as instructed in the prescriptions written by defendant Bledsoe.

19. When he discharged plaintiff from the emergency department of defendant Wesley, Defendant Bledsoe informed and instructed plaintiff that she had some tests done for her pseudotumor cerebri, that the tests showed no problem that needed treatment and that it was okay for her to be discharged because she had no problems that needed treatment.

20. When he discharged plaintiff from the emergency department of defendant Wesley, Defendant Bledsoe further instructed plaintiff that she should follow up with her physician in one week.

21. Because her vision loss and headaches had not improved by the late afternoon and evening of May 17, 2014, plaintiff decided to seek treatment in the emergency department of Wesley Medical Center. Plaintiff was transported to Wesley Medical Center by her friend Julie Hertzler, and was also accompanied by her brother, Jim Callahan.

22. Plaintiff Jenny Callahan was admitted to the emergency department of Wesley Medical Center on Saturday evening, May 17, 2014, at approximately 10:56 p.m.

23. Following her admission to the emergency department of Wesley Medical Center, plaintiff was admitted to the intensive care unit of Wesley Medical Center after undergoing an MRI of her brain at approximately 4:03 a.m. on May 18, 2014, and a lumbar puncture/spinal tap at approximately 6:15 a.m. on May 18, 2014.

24. As a result of the abnormal MRI of plaintiff's brain and the lumbar puncture/spinal tap that demonstrated an elevated cerebral spinal fluid pressure of 54, plaintiff was seen in consultation by a neurosurgeon, Raymond W. Grundmeyer, III, M.D.

25. When Dr. Grundmeyer examined and evaluated plaintiff at approximately 11:17 a.m. on May 18, 2014, in the intensive care unit of Wesley Medical Center, he recommended an emergency right frontal ventriculoperitoneal shunt placement.

26. Dr. Grundmeyer performed an emergency right frontal ventriculoperitoneal shunt placement procedure which started at 1:33 p.m. and ended at 2:38 p.m. on May 18, 2014. Dr. Grundmeyer's preoperative diagnosis was acute visual loss (blindness) with pseudotumor cerebri and his postoperative diagnosis was acute visual loss (blindness) with pseudotumor cerebri.

27. Plaintiff was discharged from Wesley Medical Center on May 29, 2014. Her discharge diagnosis was acute visual loss (blindness) secondary to hypertensive emergency and increased intracranial pressure caused by pseudotumor cerebri. Plaintiff's vision loss/blindness caused by hypertension and increased intracranial pressure is permanent and irreversible.

28. When plaintiff was admitted as a patient of the emergency department of defendant Wesley at approximately 1:04 p.m. on May 15, 2014, her bilateral abnormal visual acuity/loss of vision, her bilateral abnormal pupils that were dilated and nonreactive and her headaches were caused by intracranial pressure, increased cerebral spinal fluid pressure and extreme hypertension.

29.     Plaintiff Jenny Callahan's permanent loss of vision/blindness was caused or contributed to be caused by the failure to decrease her intracranial pressure and cerebral spinal fluid pressure through a lumbar puncture/spinal tap while she was a patient of the emergency department of defendant Wesley during the afternoon of May 15, 2014, and the failure to decrease her cerebral spinal fluid pressure and her intracranial pressure through the placement of a shunt.

30.     Defendant Bledsoe, the nursing staff and other health care providers of defendant Wesley, including but not limited to Ashley Snyder, RN, and Brandelein Stefonek, RN, failed to recognize, consider, diagnose, manage and treat plaintiff's increased intracranial pressure and increased cerebral spinal fluid pressure and they failed to recognize, consider, diagnose, and manage and treat the cause of plaintiff's extreme hypertension while she was a patient of the emergency department of defendant Wesley during the afternoon of May 15, 2014.

31.     Plaintiff Jenny Callahan's permanent loss of vision/blindness was caused or contributed to be caused by the failure of defendant Bledsoe, nursing staff and other healthcare providers of defendant Wesley, including but not limited to Ashley Snyder, RN, and Brandelein Stefonek, RN, to recognize, consider, diagnose, manage and treat plaintiff's increased intracranial pressure and increased cerebral spinal fluid pressure and to recognize, consider, diagnose, and manage and treat the cause of plaintiff's extreme hypertension while she was a patient of the emergency department of defendant Wesley during the afternoon of May 15, 2014.

32.     Defendant Bledsoe, as a licensed physician who had a physician-patient relationship with plaintiff Jenny Callahan, had a duty to plaintiff to exercise reasonable and ordinary care during his medical care, treatment and management of plaintiff while she was his patient in the emergency department of defendant Wesley from 1:04 p.m. to her discharge at 5:03 p.m. on May 15, 2014.

33. Defendant Bledsoe violated his duty to exercise reasonable and ordinary care and was thereby negligent in one or more of the following respects:

a. Failure to recognize, consider, diagnose and manage and treat the cause of plaintiff's bilateral abnormal visual acuity/loss of vision and plaintiff's bilateral abnormal pupils that were dilated and nonreactive;

b. Failure to recognize, consider, diagnose and manage and treat the cause of plaintiff's extreme hypertension;

c. Failure to recognize, consider diagnose, manage and treat plaintiff's increased intracranial pressure and increased cerebral spinal fluid pressure;

d. Failure to order a lumbar puncture/spinal tap;

e. Failure to order a brain MRI;

f. Failure to consult with a neurologist;

g. Failure to consult with an ophthalmologist;

h. Failure to consult with a neurosurgeon;

i. Failure to recognize, consider, diagnose and manage and treat the cause of significant objective and subjective signs, symptoms and findings of increased intracranial pressure and increased cerebral spinal fluid pressure;

j. Failure to recognize, consider, diagnose and manage and treat the objective and subjective signs symptoms and findings of acute or active pseudotumor cerebri;

k. Failure to admit plaintiff as an inpatient to the hospital; and

l. Advising and instructing plaintiff that the tests performed showed no problems that needed treatment and that it was safe for her to be discharged home.

34. As a result of the medical negligence of defendant Bledsoe, plaintiff has suffered permanent loss of vision/blindness.

35. Defendant Wesley had a legal duty to plaintiff Jenny Callahan to exercise reasonable and ordinary hospital and nursing care while she was a patient of the emergency department of Wesley Woodlawn Hospital & ER from 1:04 p.m. to her discharge at 5:03 p.m. on May 15, 2014.

36. Defendant Wesley and its healthcare provider agents, servants and employees, including but not limited to Ashley Snyder, RN, and Brandelein Stefonek, RN, violated its duty to exercise reasonable and ordinary hospital and nursing care and was thereby negligent in one or more of the following respects:

   a. Failure to recognize and respond to significant objective and subjective signs, symptoms and findings of acute or active pseudotumor cerebri;

   b. Failure to recognize and respond to significant objective and subjective signs, symptoms and findings of extreme hypertension;

   c. Failure to recognize and respond to significant objective and subjective signs, symptoms and findings of increased intracranial pressure and increased cerebral spinal fluid pressure;

   d. Failure to have and follow appropriate policies and procedures for the appropriate care, treatment, management and diagnosis of emergency department patients who present with the condition of pseudotumor cerebri; and

   e. Failure to have and follow appropriate policies and procedures for the appropriate care, treatment, management and diagnosis of emergency department patients with a diagnosis of pseudotumor cerebri that present with extreme hypertension.

37. As a result of the negligence of defendant Wesley, plaintiff suffered permanent loss of vision/blindness.

38. Defendant Wesley is, as a matter of law, vicariously liable for all negligent acts of its agents, servants and employees alleged herein, including but not limited to the acts and omissions of defendant Bledsoe, Ashley Snyder, RN, and Brandelein Stefonek, RN.

39. Plaintiff Jenny Callahan's permanent loss of vision/blindness has caused plaintiff to sustain past and future economic and noneconomic losses, harms and damages, including but not limited to past and future pain, suffering, mental anguish, disability, disfigurement and loss of enjoyment of life; past and future hospital, doctor, rehabilitation and related expenses; loss of earnings; and loss of earning capacity.

WHEREFORE, Plaintiff Jenny Callahan prays for judgment against defendants Bledsoe and Wesley for a sum in excess of Seventy-Five Thousand Dollars ($75,000.00), for all past and future economic and noneconomic damages sustained as a result of the defendants' negligence, and for such further relief as the Court deems just and proper in order to fairly compensate plaintiff for the losses suffered.

Respectfully submitted,

SHAMBERG, JOHNSON & BERGMAN,
  CHARTERED

By  */s/ Lynn R. Johnson*
    Lynn R. Johnson, KS# 07041
    David R. Morantz, KS #22431
    Paige L. McCreary, KS #27154
    2600 Grand Boulevard, Ste. 550
    Kansas City, MO  64108
    (816) 474-0004
    (816) 474-0003 Fax
    ljohnson@sjblaw.com
    dmorantz@sjblaw.com
    pmccreary@sjblaw.com
    **ATTORNEYS FOR PLAINTIFF**