2015 WL 4709706 (Kan.Dist.Ct.) (Trial Order)
District Court of Kansas.
Civil Court Department
Johnson County

Kumkum BISARIYA, Plaintiff,
v.
SVETLANA SOBOLEVSKAYA, D.D.S., and Image Dentistry, P.A., Defendants.

No. 14 CV 7546.
August 6, 2015.

**Memorandum Decision**

James F. Vano, Judge.

**(Denying *Ex Parte* Interviews with Treating Health Care Providers)**

*1 This matter is before the Court on Defendants' Motion for Disclosure Order and Authorizing Disclosure of Plaintiff's Protected Health Information and *Ex Parte* Interviews.[1] Plaintiff filed a Response in Opposition to Defendants' Motion.[2] On June 30, 2015, the parties, through counsel, appeared for oral argument. The motion involves consideration of The Health Insurance Portability and Accountability Act ("HIPAA") and federal regulations adopted upon authorization by that Act. The matter was taken under advisement and is now ready for decision.

After reviewing the parties' briefs and exhibits, and after considering oral arguments and conducting its own research, the Court finds that Defendants' Motion should be, and hereby is, **DENIED** with regard to the *ex parte* interviews requested.

**I. *FACTS***

Highly summarized, this is a dental negligence case arising out of the care of Kumkum Bisariya. Plaintiff alleges that Svetlana Sobolevskaya, D.D.S., and Image Dentistry, P.A., acted negligently in examining, diagnosing, and treating Plaintiff, resulting in the delayed

EXHIBIT

A

detection of an ameloblastoma developing in Plaintiff's jaw. Defendants argue that in order to defend the claims brought against them, they need a Court Order for the disclosure of Plaintiff's health information, including *ex parte* interviews with Plaintiff's health care providers. The *ex parte* interview is the issue in this disputed motion.

By use of the term "*ex parte*" in this context, Defendants are seeking authorization for a private off-the-record conversation between defense counsel and Plaintiff's treating doctor(s) without the presence of Plaintiff, Plaintiff's counsel, the Court, or a Court Reporter.

## II. *ANALYSIS*

Defendants assert that the Court Order they are requesting is permitted under both federal law and Kansas law. Thus, in Order to adequately tackle the issue before it, this Court must first engage in a preemption analysis. Only then can this Court address whether or not a Court Order for the disclosure of Plaintiff's health information, including *ex parte* interviews, is appropriate under the law. Then, assuming *arguendo* it is allowed by law, the Court will analyze whether it is appropriate as a discretionary matter.

At the outset, we note that no current treating physician is a party in this case. The motion before the Court does not suggest issuance and service of a subpoena for appearance to testify concerning Plaintiff's health care issues. It seeks the issuance of an Order from this Court in the nature of an advisory opinion directed toward a non-party concerning a regulation for which that non-party is subject to enforcement by a federal agency that is also not before the Court.

### *DOES HIPAA PREEMPT KANSAS LAW?*

The federal privacy regulations "do not create a federal privilege between physician-patient or hospital-patient; rather, the regulations provide the required *procedures* for disclosure."[3] Stated differently, they recognize and preserve a benchmark of *privacy protection* for certain health information[4] and describe how covered entities may use or disclose such information.

**\*2** HIPAA and the related provisions established in the Code of Federal Regulations expressly supersede any contrary provisions of state law except as provided in 42 U.S.C. § 1320d-7(a)(2). Under the relevant exception, HIPAA and its standards do not preempt

*Bisariya v. Svetlana Sobolevskaya, D.D.S., 2015 WL 4709706 (2015)*

state law if the state law relates to the privacy of individually identifiable health information and is "more stringent" than HIPAA's requirements.[5]

"State law" is defined as "a constitution, statute, regulations, rule, common law, or other State action having the force and effect of law."[6] "Contrary" in this context means:

(1) A covered entity or business associate would find it impossible to comply with both the State and Federal requirements; or

(2) The provision of State law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of part C of title XI of the Act, section 264 of Public Law 104-191, or sections 13400-13424 of Public Law 111-5, as applicable.[7]

Under the ordinary and plain language of HIPAA's preemption clause, to engage in a preemption analysis, this Court must identify which (if any) provision of HIPAA conflicts with Kansas law on *ex parte* communications between attorneys and health care providers.

## -HIPAA-

The Health Insurance Portability and Accountability Act ("HIPAA") was enacted by Congress in 1996.[8] It directed that if Congress failed to,

enact "legislation governing standards with respect to the privacy of individually identifiable health information within 36 months after HIPAA was enacted," the Secretary of Health and Human Services would be required to "promulgate final regulations containing such standards…"[9]

Pursuant to that legislative mandate, the following general rule pertaining to the disclosure of health information was created. It is imposed against "covered entities"[10] and enforced by the Health and Human Services' ("HHS") Office for Civil Rights.[11]

[u]nder HIPAA, the general rule pertaining to the disclosure of protected health information is that a covered entity may not use or disclose protected health information without a written authorization from the individual as described in 45 C.F.R. 164.508, or, alternatively, the opportunity for the individual to agree or object as described in 45 C.F.R. 164.510.[12]

"Covered entities" means "health plans, health care clearinghouses, and...any health care provider who transmits health information in electronic form in connection with transactions for which the Secretary of HHS has adopted standards under HIPAA[.]"[13]

*3 "Health information" has been defined by the Secretary as follows:

*any* information, including genetic information, *whether oral or recorded in any form or medium*, that:

(1) Is created or received by a health care provider, health plan, public health authority, employer, life insurer, school or university, or health care clearinghouse; and

(2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual.[14]

As such, the term *oral* communication clearly includes recorded oral deposition testimony and the type of unrecorded *ex parte* "oral" communications with a physician sought by the defense in the case at bar.[15] "[L]ikewise, it encompasses health information that is part of a written medical record or the physician's memory of his treatment of the patient."[16] In short, HIPAA prohibits physicians from engaging in *ex parte* communications regarding a patient's protected health information unless an express exception applies.[17]

164.512 ... enumerates several specific situations in which "[a] covered entity may use or disclose protected health information without the written authorization of the individual, as described in [45 C.F.R.] 164.508, or the opportunity for the individual to agree or object as described in [45 C.F.R.] 164.510..." This regulation provides alternative requirements for disclosures in specific situations.[18]

The regulation relied on by Defendants in support of their request is 45 C.F.R. 164.512(e)(1)(i), which provides as follows:
(1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

i. In response to an Order of a Court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such Order; ...[19]

These requirements must be procedurally met before disclosure of protected health information, including *ex parte* communications, may occur. Therefore, HIPAA itself refers in part to State law and State Court jurisdiction to issue specific Orders within judicial proceedings.

## -KANSAS LAW-

The Kansas Court of Appeals has declined the opportunity to address the issue of *ex parte* communications between attorneys and physicians. The issue has not yet reached the Kansas Supreme Court. Nevertheless, it is undisputed that numerous Kansas District Courts and federal District Courts have approved Court Orders allowing *ex parte* communications with treating health care providers based on the assumed waiver of a physician-patient privilege upon the mere filing of a personal injury suit placing the Plaintiff's health in issue. Defendants have attached some thirty-seven exhibits of state and federal decisions and agreed Orders granting or approving *ex parte* interviews of treating physicians. Those opinions, by respected fellow jurists and colleagues, are not persuasive. Many fail to analyze the matter at all, simply signing off on agreements of the parties' counsel. Some take a contrary view of the meaning of "in the course of any judicial proceeding" within the context of the federal privacy concerns of HIPAA, while others adopt some conclusory statements and negative assumptions made by the defense or adopt disapproving views about practical issues favoring Plaintiffs without any empirical evidence. Many merely adopt the faulty reasoning of others without any controlling mandate of law or independent in-depth analysis of their own judicial authority or discretion, and without balancing the interest of the parties or the statutory framework involved. The parties before the Court are entitled to an independent analysis.

**\*4** K.S.A. **60-427** states in part as follows:

> (d) There is no privilege under this section in an action in which the condition of the patient is an element or factor of the claim or defense of the patient or of any part claiming through or under the patient or claiming as a beneficiary of the patient through a contract to which the patient is or was a party.[20]

In making those decisions to allow *ex parte* interviews, Courts have articulated various versions of the following rationalization:

> While the information is clearly confidential, when the patient files an

Bisariya v. Svetlana Sobolevskaya, D.D.S., 2015 WL 4709706 (2015)

action placing his medical condition in issue, the patient no longer has the right to preclude the physician from disclosing, to the adverse party in that litigation, facts related to the physician-patient relationship, notwithstanding the confidentiality which continues to exist as to disclosure to persons not related to the pending litigation. The physician is simply released from the constraints of the confidential relationship for the purposes of the litigation. Had the legislature intended otherwise, it would have so provided.[21]

Furthermore, that Court noted, "[a]s with any fact witness, a treating physician may confer or refuse to confer with a litigant or his or her representative, including the patient's own attorney. ... The option is that of the witness."[22] Clearly, that notion is in reference to conversations outside of any judicially controlled proceedings.

From this, it appears that Kansas law, standing alone, contemplates no procedure at all before the disclosure of protected health information via any informal methods including *ex parte* communications could be expected. Rather, the suspension of a privilege under K.S.A. **60-427**(d) is accomplished as a matter of law.

The Court finds no need whatsoever, as some of Defendants' cited authorities suggest, to tell a treating physician – a fact witness not retained or otherwise considered as an expert witness of a party – that he or she has a right, separate and apart from any "Order" the Court could generate, *NOT* to talk informally, off-the-record and absent compulsory process, with third-parties like these Defendants about Plaintiff's health care information. One must assume they always have the right to choose not to talk informally with anyone. That right is not created by our Orders. As such, the Order suggested would serve only to confuse and would leave the impression that *the Court* grants that right to refuse but "authorizes" the *ex parte* interview to occur. We decline to do that.

## -PREEMPTION ANALYSIS-

In Attorney General Opinion No. 04-21, the Kansas Attorney General opined that the procedural "baseline" of 45 C.F.R. 164.512(e) preempts Kansas state privilege laws including K.S.A. **60-427**(c). Therein, the following was stated:

> *5 Each of the above privileges granted by statute [including K.S.A. **60-427**(c)] are suspended in the context of a care and treatment proceeding either by virtue of the privilege statute itself and/or by virtue of K.S.A.

*Bisariya v. Svetlana Sobolevskaya, D.D.S., 2015 WL 4709706 (2015)*

59-2965(c). This suspension of a privilege is accomplished as a matter of law, without an express Order of a Court or any alternative procedural safeguards, *i.e.*, without any procedures for notice to the person who is the subject of the health information, opportunity to object or opportunity to seek a protective Order. Consequently, in our opinion 45 C.F.R. § 164.512(e) is procedurally "more stringent" than any of the foregoing privilege statutes and the applicable suspension of such privileges, and thus preempts each of them in relation to the procedure required before a patient's health information may be disclosed. Thus, HIPAA's procedural "baseline" pursuant to 45 C.F.R. § 164.512(e), as discussed herein, must be reached before a health care provider becomes authorized under the applicable Kansas privilege law suspension to disclose health information in a care and treatment proceeding. Once any requisite procedures pursuant to 45 C.F.R. § 164.512(e) have been complied with, any relevant and material evidence may be admitted in a care and treatment proceeding by virtue of K.S.A. 59- 2003 Supp. 2965(c) and by virtue of the suspension of a privilege pursuant to an applicable Kansas privilege statute.[23]

Though Opinion No. 04-21 did not directly address the preemption of K.S.A. **60-427**(d), this Court is confident that its analysis applies equally to subsection (d). This is particularly true in light of the fact that K.S.A. **60-427**(d) outlines the suspension of a privilege accomplished as a matter of law. The absence of any procedural safeguard in Kansas law lies in stark contrast to the procedures enumerated in 45 C.F.R. 164.512(e). As such, 45 C.F.R. 164.512(e) is procedurally "more stringent" than K.S.A. **60-427**(d) and preempts K.S.A. **60-427**(d) in regards to the procedure required before a patient's health information may be disclosed. In effect, this means that the procedural prerequisites of C.F.R. 164.512(e) must be met, if they can be, before protected health information may be disclosed via an informal investigative method of *ex parte* communications, pursuant to the physician-patient statute K.S.A. **60-427**(d).

Here, defense counsel does not want a record of the proposed conversation or interview and does not want to turn over the results of the interview in discovery because the questioning itself might reveal work product of the defense. Accordingly, the defense appears to hold a preference for trial by ambush. It is not a formal discovery proceeding found anywhere within the discovery statutes that they seek over Plaintiff's objection. It is a procedure outside of judicial control and beyond judicial oversight that is being requested here.

Bisariya v. Svetlana Sobolevskaya, D.D.S., 2015 WL 4709706 (2015)

### CAN HIPAA'S PROCEDURAL "BASELINE" AS TO EX PARTE COMMUNICATIONS BE COMPLIED WITH?

"[T]he plain and ordinary language of 45 C.F.R. 164.512(e)(1) does not authorize the disclosure of protected health information during a meeting in which an attorney, without express authorization of the patient, has *ex parte* communications with a physician."[24] Specifically, the express language of the regulation clearly allows disclosure of protected health information, under federal law, *in the course of any judicial proceeding* if certain measures are met – *i.e.* obtainment of a Court Order. The Court notes that requisite condition does not expressly include a generally applicable Local Rule. Failure to comply with an Order can be a contempt of the issuing Court. A verbal Order to a witness during the course of trial can free a health care provider to testify. An "Order" to divulge health care information is not a *permit* to do so. An Order is compulsory. This Motion before the Court, on the other hand, seeks something more in the nature of a permit.

While neither HIPAA nor its regulations expressly define "in the course of" or "judicial proceeding," or expressly state whether the term should be given its common, narrow or broad legal definitions, a narrow definition is implicit in HIPAA's regulatory requirement in 45 C.F.R. § 164.512(e)(1) that a covered entity may make disclosures only pursuant to a Court Order or subpoena, discovery request, or other lawful process. The Secretary has stated that this means that:

\*6 In § 164.512(e) of the final rule, we permit covered entities to disclose protected health information *in a* judicial or administrative proceeding if the request for such protected health information is made through or pursuant to an Order from a Court or administrative tribunal or in response to a subpoena or discovery request from, or other lawful process by a party to the proceeding.

In other words, such disclosure must be under the supervisory authority of the Court either through discovery or through other formal Court procedures.[25]

The essence of *ex parte* communications is distinctly at odds with such a description.[26] As such, the meeting at which an *ex parte* communication with a physician occurs "is not a judicial proceeding because the trial Court has no general oversight of the meeting or any control over it."[27] Furthermore, "there is no regulation in the HIPAA framework that authorizes a trial Court in [Kansas] to issue an Order permitting a physician to divulge a patient's protected health information outside the confines of a judicial proceeding over which the trial Court has direct supervision thereof."[28] As such, "45 C.F.R. 164.512(e), which permits disclosures in the course of judicial proceedings, does not apply to a

*Bisariya v. Svetlana Sobolevskaya, D.D.S.*, 2015 WL 4709706 (2015)

meeting for *ex parte* communications [.]"[29] Stated differently, the procedural "baseline" required under 45 C.F.R. 164.512(e) cannot be complied with in the context of *ex parte* communications. Because this requirement has not been met, this Court "has no authority to issue a purported HIPAA Order advising the plaintiff's non-party treating physicians that they may or may not participate in informal discovery via *ex parte* communications"[30] in any manner endorsed by HIPAA and its regulations. Such an Order, as requested in this case, would be no more than an advisory opinion. In fact, it would be the epitome of an advisory opinion, taking the proposed chat outside the confines of this judicial proceeding.[31]

*7 Absent privilege or other restrictive law or regulation, or protective Court Order preventing this, a party is always free to interview any fact witnesses it desires to interview. No Court Order is needed. And, the witnesses' statements may be subject to discovery. Furthermore, any such fact witnesses are free to decline an interview – absent compulsory process –without any Court Order.

Presuming to act where no Order is needed, required, authorized or contemplated by statute or regulation does not transform the Order to proceed outside of the judicial oversight into one that is "in the course of a judicial proceeding." Putting a signature upon an ill-advised Order for an activity to occur that is not within the contemplation of a judicial proceeding, although the Order itself may be covered by judicial immunity and have the appearance of a judicial mandate, does not convert the proposed interview into the kind of judicial proceeding that appears to be contemplated by the federal regulation. The proposed Order is nothing more than a permit for a procedure by its own definition outside of these judicial proceedings. This Court cannot presume to so construe its jurisdiction or the regulation without at least some participation in this litigation by the Secretary of Health and Human Services, a designee of the Secretary, or some health care provider directly impacted or at risk by enforcement of those regulations in some other forum. Those regulations are intended to preserve and protect health care privacy, not to be cast aside by judicial fiat.

Essential to the judicial function is the concept of due process. The lifeblood of due process is notice and a meaningful opportunity to be heard. The *ex parte* unmonitored, unrecorded, and uncontrolled conversation Defendants seek to have the Court "authorize" by Order is diametrically opposed to the concept of due process.

Simply issuing the Order requested in a judicial proceeding, such as that requested in the case at bar, might on the surface alone appear to be an Order within a judicial proceeding. The contemplation of the federal regulations, however, is more rationally construed to

mean a recorded or judge-monitored judicial proceeding itself. It is, after all, still a privacy regulation. The Order to disclose envisioned by the regulations is to disclose *within* the truth-seeking judicial proceeding which is itself governed by law to include judicial oversight, sanction authority, contempt powers, full disclosure, notice and an opportunity to be heard, and a complete record. The Order requested by the defense is to allow a private conversation that is by its very definition *not within* this judicial proceeding.

Defendants have not satisfied the procedural requirements contemplated by the federal regulations. Indeed, off-the-record unmonitored *ex parte* interviews which by their very nature exclude judicial oversight or meaningful review will never satisfy the procedural prerequisite of being "in the course of judicial proceedings" without a substantive change in the Kansas codes of procedure applicable in our District Courts.

## IS THE REQUESTED COURT ORDER APPROPRIATE?

Beyond the fact that such an Order issued by this Court would be an advisory opinion only appearing to permit an unenforceable procedure *outside* of any judicial proceedings, this Court is inclined to note in the exercise of discretion that there are additional competing policy reasons and considerations to justify denial of Defendants' motion as requested.

**\*8** First, this Court concludes that allowance of the *ex parte* communications Defendants desire would or reasonably could substantially undermine patient expectations of physician- patient confidentiality in ongoing and future treatment that may be needed.

> The healthcare fiduciary duty of confidentiality exists to foster appropriate medical treatment of patients by assuring patients that their honest and complete disclosures of symptoms and medical history to treating physicians will be kept confidential. Allowing ex parte communications between a treating physician and opposing parties in litigation would undermine the physician-patient relationship because patients would lack adequate assurance that their candid responses to questions important to determining their appropriate medical treatment would remain confidential.[32]

In other words, patients have no assurance that areas of inquiry and discussions between the treating doctor and defense lawyer will be kept within the relevant issues of this case.

No record would be kept to be reviewable. Confidence in the treating physician reasonably could be destabilized when the patient is made to feel that they are no more than the subject of gossip behind their backs. Notwithstanding a lawsuit, the patient has a continuing interest, generally speaking, in an ongoing relationship with the doctor in whom they have placed their confidence and trust concerning the utmost interest at stake, their personal health. Defense reasons for requesting this *ex parte* interview do not justify the potential damage to that confidence. As such, *ex parte* communications between attorneys and physicians "are destructive to the relationship that exists between a physician and a patient."[33]

Second, this Court is of the opinion "that permitting *ex parte* communications between a treating physician and an opposing counsel would make it impossible for a patient or a Court to appropriately monitor the scope of the physician's disclosures."[34] "[A] patient's waiver of privilege does not mean that everything disclosed to or learned by a physician in the course of treating a patient is subject to disclosure once a patient's physical or mental condition is at issue in litigation."[35] Rather, "[t]he decision to waive the privilege as to unrelated matters belongs to the patient; yet, if *ex parte* interviews are permitted, it would be left to the physician to determine what information is subject to disclosure and what remains privileged."[36] In essence,

**\*9** [w]e are concerned ... with the difficulty of determining whether a particular piece of information is relevant to the claim being litigated. Placing the burden of determining relevancy on an attorney, who does not know the nature of the confidential disclosure about to be elicited, is risky. Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician.[37]

Furthermore, "[t]he doctor is not only unskilled in making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure."[38] As such, this Court believes that "this determination is better made in a setting in which counsel for each party [and, preferably, the patient also] is present and the Court is available to settle disputes"[39] based upon a record.

Requiring the contact with treating physicians to occur only in the context of formal discovery relieves the physician of this responsibility, protects him from inadvertent liability, and protects any information still privileged by assuring plaintiff's representative will be in a position to timely assert the privilege where appropriate. Formal discovery, on the record, with notice and an opportunity to other parties to be present and to participate in the proceedings, is simply the fairest and most satisfactory means of obtaining discovery from a treating physician.[40]

Notice and an opportunity to be heard are fundamental to the judicial process.

Third, *ex parte* "interviews can create situations which invite questionable conduct."[41]

For example,

> [t]hey may disintegrate into a discussion of the adverse impact the jury award may have on the rising cost of medical insurance rates. They may result in attempts to dissuade the doctor from testifying. They may result in defense counsel abusing the opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which might neither be relevant to the law suit nor lead to the discovery of admissible evidence.[42]

In short, "there are no safeguards against the revelation of matters irrelevant to the lawsuit[.]"[43] The *ex parte* interview might allow defense counsel to inadvertently inject or suggest questionable medical or social background which has no basis in fact and of which the treating physician is unaware, thereby undermining the physician-patient relationship and treatment decisions. Or worse, the unrecorded conversation could disintegrate to insinuations, suggestion or intimidations, or even the perception of the same by the physician, that the treating physician himself or herself erred or caused the patient's problems. There may even be open or veiled threats or a perception of the same that the physician might be the next defendant in his or her own negligence case or for aiding in this malicious prosecution with the Plaintiff. The unsupervised adversarial activity suggested by the defense is fraught with danger to and potential abuse by both the defense counsel and the treating physician. It is simply not worth that risk.

**\*10** The Court does not presume that defense counsel will act inappropriately, unethically, or unprofessionally. Nothing could be farther from that thought, particularly with defense counsel in this case, and no such thought is advanced by the Plaintiff. The Court is saying there is no reliable way for it to ever know if that were the case. There is no opportunity for judicial oversight and review. Judicial proceedings on-the-record, however, do afford the opportunity for such review. Furthermore, they provide ample protection from such accusations by any party against the Defendants' lawyer. It would be just as unfair to presume Plaintiff's counsel could act unethically or inappropriately as some other Courts may have done in their analysis of similar defense requests to proceed with *ex parte* interviews. Simply making an Order to proceed *ex parte* and saying the Court trusts counsel to be professional abrogates the judicial role in a judicial proceeding

and evidences a naïveté like believing that our theft laws prevent theft and murder laws prevent the countless unsolved murders that are on police blotters around the country. Lawyers do on occasion breach the bounds of professionalism and ethics. And occasionally, in their zeal, they are perceived to do so by others even when they do not.

Fourth, denial of Defendants' motion does not mean that Defendants are "foreclosed from obtaining relevant medical information from a treating physician."[44] Absent express consent to counsel's *ex parte* communications with Plaintiff's treating physicians without any involvement or need for a separate blessing by the Court, "[i]nformation or evidence that can be obtained legitimately through *ex parte* discussion [with treating physicians] can also be obtained through the methods of discovery"[45] enumerated by the Rules of Civil Procedure. This "strikes a balance between enabling the patient to protect confidential medical information that has no relevance to the civil action and providing the patient's adversary access to information that is relevant to a condition placed at issue in the case."[46] "Any burdens caused to defendants by being restricted to the specially enumerated discovery procedures are outweighed by the potential risk to the physician-patient relationship in deviating from those procedures."[47]

Defense arguments that *ex parte* interviews are a cost-saving measure within the meaning of K.S.A. 60-102 are conclusory statements at best and unsupported by evidence. Yet, they have been accepted without batting an eye by some Courts. Those statements are worth as much as the allegations, insinuations or suggestions of impropriety offered without any empirical evidence. The *ex parte* interviews requested might just as likely prolong litigation and increase expenses to both parties and, more importantly on balance, compromise ongoing health care needs. Simply put, the conclusory suggestion of some cost-savings does not outweigh the other factors considered in this ruling.

Defense suggests that this *ex parte* conversation puts both lawyers on equal footing. Since Plaintiff's lawyer can talk to the treating physician without anyone present, they argue they should have an equal privilege. However, the circumstances are not the same. Of all the competing interests in this case, Plaintiff has the sole overarching interest in being healthy. In the litigation, Plaintiff has the primary burden of proof and burden to make a *prima facie* case. Plaintiff's lawyers stand in the shoes of the Plaintiff in regard to the treating physician without any significant risk to the physician-patient treatment confidence. Plaintiff's counsel is not Plaintiff's adversary holding interests antagonistic to the Plaintiff. In ascertaining the existence of a good faith basis to go forward in the suit (potentially risking great loss of time, expense, investment, and reputation), the potential for abuse is not nearly equivalent to that of defense counsel having a dissimilar interest in the conversation. Furthermore, they do not have equal access to all treating physicians on

both sides of the case. Surely the defense is not suggesting that a similar Order be given to Plaintiff's counsel to speak *ex parte* with Plaintiff's prior treating physician. No, but the waiver of a privilege between patient and treating physician under K.S.A. 60-247 discussed above clearly relates to the treatment of which the Plaintiff complains, *i.e.*, that of the Defendants.

**\*11** Although it is questionable why counsel representing a litigant might want to risk turning himself or herself into a witness, *ex parte* contact - *i.e.*, informal investigation or interviewing of fact witnesses - does not appear either to be prohibited or specifically authorized by the Kansas Code of Civil Procedure. Investigations are clearly outside of the formal discovery processes. And, they are extrajudicial in nature. Statements made to the interviewing lawyer by the fact witness could hardly be work product or beyond discovery themselves, unless the lawyer is admitting that such statements obtained are actually only the product of that lawyer's professional mind. How would they be cross-examined later at trial about any alleged "inconsistent statements" made to the defense lawyer in one of these interviews? In all likelihood, impeachment at trial is not the purpose of the requested interview. Therefore, this Court declines to add a provision to the Code by Court Order.

The Court is aware that some Districts in Kansas have permitted this type of *ex parte* interview with plaintiffs' treating doctors by adopting Local Rules.[48] This District, however, has considered and declined to adopt such a rule. This Court is also aware by rumor and by careful review of Defendants' attached exhibits, of other Kansas District Judges allowing the requested contact and signing "Orders" proposed to them. For the reasons stated herein, the Court declines to follow their lead. Such Orders are not contemplated in Kansas procedural law, appear on their face to authorize non-judicial proceedings, and would be unenforceable advisory opinions only.

As Justice Oliver Wendell Holmes pointed out while discussing standards of law many years ago, simply following the crowd does not establish the standard of law. "What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it is usually complied with or not."[49] Simply citing a number of cases that have ruled in favor of the defense's request is not itself persuasive.

On balance, in addition to the lack of legal grounds, this is simply not a good idea. Even assuming *arguendo* that it is within the law and subject to the Court's discretion, the Court does not see this as an appropriate Order to issue when considering the balance of the interests at stake.

Bisariya v. Svetlana Sobolevskaya, D.D.S., 2015 WL 4709706 (2015)

## III. *CONCLUSION*

For the reasons set forth above, the Court finds that Defendants' Motion for Disclosure Order and Authorizing Disclosure of Plaintiff's Protected Health Information and *Ex Parte* Interviews as requested, should be, and hereby is, **DENIED**. The Court will, as needed, Order production of records and appearances for depositions, including disclosure of all relevant health care information of the Plaintiff, within the statutory framework of Kansas procedural law and this judicial proceeding covering in-Court and formal discovery proceedings. The Court will not issue any Order for advisory purposes, purporting to encourage or advise a health care provider to ignore or interpret HIPAA obligations to engage in any off-the-record conversations with anyone, as the defense suggests.

In the absence of a specific mandate from Congress or the federal agency responsible for enforcement of HIPAA, the Kansas Legislature, or the Kansas Appellate Courts, this Court is not going to lend itself or attach its signature, seal or *imprimatur*, to any form of simulated process giving the appearance of an Order but actually being nothing more than an advisory opinion to a non-party to do some act outside of this judicial proceeding that the Court cannot enforce, monitor, sanction or effectively review.

**IT IS SO ORDERED.**

This Memorandum Decision is the ruling of the Court and no other Journal Entry will be needed.

**\*12** Dated this 6th day of August, 2015.

*/s/ James F. Vano*

JAMES F. VANO

District Judge, Division 2

Footnotes

[1]     Doc. 18.

2    Doc. 21.

3    *In re Estate of Broderick*, 34 Kan. App. 2d 695, 702, 125 P.3d 564, 569 (2005) (emphasis added).

4    *See In re Estate of Broderick*, 34 Kan. App. 2d 695, 702, 125 P.3d 564, 570 (2005) ("HIPAA regulations preempt any contrary provision of state law unless the state law provides greater privacy protection for an individual whose health information is protected."); *see* 45 C.F.R. 160-203(b) (2015) ("A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law. This general rule applies, except if one or more of the following conditions is met... (b) The provision of State law relates to the privacy of individually identifiable health information and is more stringent than a standard, requirement, or implementation specification adopted under subpart E of part 164 of this subchapter.")

5    Att. Gen. Op. No. 04-21, at *9 (July 7, 2004) (citing *Law v. Zuckerman*, 307 F. Supp. 705 (D. Md. S.D. 2004)).

6    45 C.F.R. § 160.202 (2015).

7    45 C.F.R. § 160.202 (2015).

8    *Holman v. Rasak*, 486 Mich. 429, 434, 785 N.W.2d 98, 101 (2010).

9    *Holman v. Rasak*, 486 Mich. 429, 434, 785 N.W.2d 98, 101 (2010) (internal citation omitted).

10    U.S. DEPT. OF HEALTH & HUMAN SERVICES, SUMMARY OF THE HIPAA PRIVACY RULE, *available at* http://www.hhs.gov/ocr/privacy/hipaa/understanding/summary/; see 45 C.F.R. § 160.103 (2015).

11    U.S. DEPT. OF HEALTH & HUMAN SERVICES, HIPAA ENFORCEMENT, *available at* http://www.hhs.gov/ocr/privacy/hipaa/enforcement/index.html.

12    *Holman v. Rasak*, 486 Mich. 429, 438-39, 785 N.W.2d 98, 104 (2010).

*Bisariya v. Svetlana Sobolevskaya, D.D.S.*, 2015 WL 4709706 (2015)

---

[13]  U.S. DEPT. OF HEALTH & HUMAN SERVICES, SUMMARY OF THE HIPAA PRIVACY RULE, *available at* http://www.hhs.gov/ocr/privacy/hipaa/understanding/summary/; *see* 45 C.F.R. § 160.103 (2015).

[14]  45 C.F.R. § 160.103 (2015) (emphasis added).

[15]  *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 150 (Mo. 2010) (emphasis original).

[16]  *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 150 (Mo. 2010).

[17]  *Holman v. Rasak*, 486 Mich. 429, 439, 785 N.W.2d 98, 104 (2010) ( "164.512, however, enumerates several specific situations in which '[a] covered entity may use or disclose protected health information…'"); *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 150 (Mo. 2010).

[18]  *Holman v. Rasak*, 486 Mich. 429, 439, 785 N.W.2d 98, 104 (2010) (internal citation omitted).

[19]  45 C.F.R. § 164.512(e)(1)(i) (2015).

[20]  Kan. Stat. Ann. § 60-427(d) (2015); *Werner v. Kliewer*, 238 Kan. 289, 293, 710 P.2d 1250, 1254-55 (1985); *State v. Campbell*, 210 Kan. 265, 281, 500 P.2d 21, 33-34 (1972).

[21]  *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991).

[22]  *Bryant v. Hilst*, 136 F.R.D. 487, 492 (D. Kan. 1991).

[23]  Att. Gen. Op. No. 04-21, at *11 (July 7, 2004).

[24]  *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 155 (Mo. 2010).

[25]  *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 156 (Mo. 2010) (emphasis original) (internal citation omitted).

[26]  Although the Supreme Court of Michigan in *Holman v. Rasak*, 486 Mich. 429, 442 (2010) stated that "the assumption that an *ex parte* interview never generates a

---

physical record" is incorrect, this Court disagrees. Although *Holman* points to the ability to record oral *ex parte* interviews, the ability to conduct *ex parte* interviews via email, and the ability to engage in *ex parte* communications via exchange of documents, that is not the sort of *ex parte* communications being contemplated in the case at hand. We are dealing here expressly with a "non-recorded conversation" request.

27    *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 157 (Mo. 2010); see also *Heags, et al. vs. Ashkar, M.D. et al.*, No. 2009-CV-69 (Dist. Ct. Leavenworth Cnty, Kan. January 29, 2010) (Judge King stated that "because the Court has no general oversight or control over the meetings that defendant now asks this Court to 'authorize' or 'permit,' 45 C.F.R. § 164.512(e), which permits disclosure of private health information in the course of judicial proceedings, does not apply to the proposed *ex parte* meetings. In this respect, the Court finds persuasive the logic and language used by the Missouri Court of Appeals in *State ex rel. Proctor v. Messina*....., wherein the appellate Court stated that counsel can use methods prescribed by the rules of discovery, namely depositions, to seek information from a plaintiff's treating physicians.")

28    *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 158 (Mo. 2010).

29    *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 157 (Mo. 2010).

30    *State ex rel. Proctor v. Messina*, 320 S.W.3d 145, 157 (Mo. 2010).

31    It is difficult to imagine a treating health care provider as anything other than an expert witness, particularly if treatment decisions are based upon professional diagnostic opinions of causation, etiology and future needs.

32    *Sorensen v. Barbuto*, 177 P.3d 614, 619 (Utah 2008) (noting that "[t]he Illinois Court of Appeals prohibited this type of *ex parte* communications on this very ground" in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 590, 499 N.E.2d 952, 959 (1986) which stated that "when a physician and defense counsel engaged in an *ex parte* conference regarding the confidences of the patient...the confidentiality which once existed between the patient and his physician is completely disregarded and the sanctity of the relationship existing between a patient and his physician is thereby destroyed.") (citing the Arizona Court of Appeals decision *Duquette v. Superior Ct. In and For Cnty. of Maricopa*, 161 Ariz. 269, 275, 778 P.2d 634, 640 (1989) which stated that *ex parte* communications of

this type would be "destructive of both the confidential and fiduciary natures of the physician-patient relationship.").

33    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008).

34    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008).

35    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008); *see Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994) ("Moreover, while Rule 509 removes the privilege in regard to information concerning any medical condition in issue, information not related to that condition remains privileged.").

36    *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994).

37    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008) (citing the Iowa Supreme Court in *Roosevelt Hotel Ltd. v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986)).

38    *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994) (citing *Harlan v. Lewis*, 982 F.2d 1255, 1264 (8th Cir. 1993)).

39    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008) (citing the Iowa Supreme Court in *Roosevelt Hotel Ltd. v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986)).

40    *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601-02 (S.D. Tex. 1994) (citing *Manion v. N.P.W. Med. Center of N.E. Penn, Inc.*, 676 F. Supp. 585, 589 (M.D. Penn. 1987)).

41    *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994).

42    *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994) (internal citations omitted).

43    *Horner v. Rowan Companies, Inc.*, 153 F.R.D. 597, 601 (S.D. Tex. 1994).

44    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008).

45    *State ex re. Proctor v. Messina*, 320 S.W.3d 145, 158 (Mo. 2010).

46    *Sorensen v. Barbuto*, 177 P.3d 614, 620 (Utah 2008).

Bisariya v. Svetlana Sobolevskaya, D.D.S., 2015 WL 4709706 (2015)

47    *State ex re. Proctor v. Messina*, 320 S.W.3d 145, 158 (Mo. 2010).

48    See *e.g.*, DCR 3.212 (3rd Judicial District, Shawnee County); Rule 208 (18th Judicial District, Sedgwick County).

49    *Texas & P. Ry. Co. v. Behymer*, 189 U.S. 468, 470, 23 S. Ct. 622, 622 (1903).

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.