GILLILAND & HAYES, LLC
301 N. Main, Suite 1300
Wichita, Kansas 67202-4813
(316) 264-7321
mwatson@gh-ks.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENOISE M. CALLAHAN            )
                              )
            Plaintiff,        )
                              )
vs.                           )      Case No.  16-CV-2310-JAR-GLR
                              )
SCOTT BLEDSOE, M.D. and       )
WESLEY MEDICAL CENTER, LLC,   )
                              )
            Defendants.       )
_____)

Pursuant to Chapter 60 of
Kansas Statutes Annotated

**DEFENDANT WESLEY MEDICAL CENTER, LLC'S RESPONSE TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT WESLEY MEDICAL CENTER, LLC**

COMES NOW Defendant Wesley Medical Center, LLC., (hereinafter "Wesley") by and

through its attorney of record, Michelle M. Watson, of Gilliland & Hayes, LLC, and for its

Response to Plaintiff's First Request for Production of Documents to Wesley Medical Center,

LLC states as follows:

1.      The personnel files of Ashley Snyder, RN, Brandelein Stefonek, RN, David

Lawson, RN and Rhiannon Zerbe RN.

**RESPONSE:   Objection, the request seeks irrelevant information which is not
intended to lead to the discovery of admissible evidence, and seeks information irrelevant
to whether the nurse breached the standard of care in her or his involvement with this
patient.  The requested files contain information that is personal and confidential to the
employee, therefore, Wesley restricts access to the personnel files and protects the
employee's privacy interest in same.  Wesley further objects that portions of the requested**

documents are protected by Kansas' peer review and risk management privileges, K.S.A. 65-4915 and 65-4925. (See privilege log)  Further, Rhiannon Zerbe, RN provided no patient care, nor was she on duty on May 15, 2014 when the patient was seen, she merely took a phone call from the patient's brother, making her personnel file irrelevant and Wesley objects to the compilation of a privilege log for her personnel file.

A copy of the employee's educational records for the 2 years prior to the occurrence asserted in the Complaint are produced for:
David Lawson, RN at Bates No. W0082-W0086
Ashley Snyder, RN at Bates No. W0087-W0091
Brandelein Stefonek, RN at Bates No. W0092-W0095
Rhiannon Zerbe, RN at Bates No. W0096-W0103

A copy of the job descriptions in effect in May, 2014 (although they are dated April 2015, these were actually in effect) are provided for Manager Nursing Emergency Department at Bates No. W0104-W0107; Assistant Nurse Manager Emergency Department at Bates No. W0108-W0111; and RN Staff Nurse Emergency Department at Bates No. W0112-W0115.

2.     The personnel file of defendant Scott Bledsoe, M.D., including but not limited to any contract of employment with Wesley Medical Center and Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital), Dr. Bledsoe's privileges file and all documents that memorialize Dr. Bledsoe's employment as an emergency physician at Wesley Woodlawn Hospital & ER.

**RESPONSE:**   Objection, this request is vague and ambiguous as to the term "privileges file," overbroad and burdensome as it is not restricted in subject matter nor timeframe.  The requested information is not relevant or reasonably calculated to lead to the discovery of admissible evidence concerning the physician's alleged breach of the standard of care in treating the patient.  All physician files contain information that is personal and confidential to the physician and therefore, Wesley restricts access to physician's files.  Finally, to the extent this request goes to documents that are considered "peer review" or "risk management" under Kansas law, Wesley asserts the peer review privilege as provided in K.S.A. 65-4915 and risk management privileges in K.S.A. 65-4925. (See privilege log).

The list of granted privileges in effect in May, 2014 for Dr. Bledsoe is produced at Bates No. W00116-W0123.

3.     A complete certified copy of each policy of insurance or coverage under which such insurance company or entity may be liable to satisfy or indemnify in whole or in part, any

judgment which may be entered against you in this action. (Declarations sheets are not sufficient).

**RESPONSE:** See Declaration Sheet at Bates No. W0124. See coverage letter from the Health Care Stabilization Fund at Bates No. W0125. Further, Wesley Medical Center further states it has $200,000 base coverage through Health Care Indemnity, Inc.; $800,000 through the Kansas Health Care Stabilization Fund; and $10 million additional excess coverage through Health Care Indemnity, Inc.

4.   Any and all documents that memorialize the May 15, 2014, patient census and staffing list for the emergency department of Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital) from 8:00 a.m. through 8:00 p.m.

**RESPONSE:** Objection, the phrases "patient census" and "staffing list" are vague and ambiguous and this request seeks information that is protected health information under HIPAA and seeks information that is irrelevant to the claims asserted in the Plaintiff's Petition that is not intended to lead to the discovery of admissible evidence. Notwithstanding, Wesley produces the Emergency Department Central Log reflecting patients who presented to the Emergency Department on May 15, 2014 between 8:00 a.m. – 8:00 p.m. The logs have been redacted to patient names, account numbers and other identifiers pursuant to HIPAA PHI protections. The log is attached at Bates No. W0126-W0130.

Wesley further produces the Kronos at Bates No. W0131-W0136 which is the timekeeping system which reflects employees on duty on May 15, 2014 in the Wesley Woodlawn Emergency Room. Please note, "Exempt" employees may not have clock in or clock out times and therefore the Kronos may not show actual arrival or departure times of those employees.

5.   All documents within your possession or right of control authored by Jenoise M. Callahan, Jim Callahan or Julie Hertzler.

**RESPONSE:** While it is unclear what is intended by the word "authored," Wesley has no documents from Jenoise M. Callahan, Jim Callahan or Julie Hertzler beyond those documents contained in the medical records which may include their handwriting.

6.     All video, including but not limited to security video, taken on May 15, 2014, from 8:00 a.m. through 8:00 p.m. of the emergency department of Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital).

**RESPONSE:  Wesley has no video, including security video, taken on that date.**


7.     The table of contents for all policies and procedures of the Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital) emergency department as they existed on May 15, 2014, and as exists today.

**RESPONSE:   Objection, overbroad as to subject matter and dates requested and unduly burdensome.  The requested information including subject matter and dates after May 15, 2014 is irrelevant to the claims at issue in this case and not meant to lead to the discovery of admissible information.**

**Wesley does not possess tables of contents or indexes for policies and procedures.  For purposes of this production response, Counsel for Wesley has utilized a keyword set in order to search policies maintained in electronic format.   Certain search terms were utilized and documents containing the terms that were non-responsive to Plaintiff's request are not being produced as they are irrelevant to the claims at issue in the case. The search terms utilized were extracted from Plaintiff's complaint:**
- **Headache**
- **Vision**
- **"pseudo tumor cerebri"**
- **"lumbar puncture"**
- **"spinal tap"**
- **"vital signs" (in association with emergency department patients)**
- **Hypertensive**
- **"Emergency Department"**
- **Consult**
- **"high blood pressure"**


**The results of the search terms were reviewed for relevance and relevant policies in effect in May, 2014 that are applicable to non-trauma ED patients are produced at Bates No. W0137-W0211. If counsel wishes additional terms to be searched, please contact counsel for Wesley.**

8.     The table of contents for all policies and procedures of the Wesley Medical Center emergency department as they existed on May 17, 2014–May 18, 2014, and as they exist today.

**RESPONSE:** Objection, overbroad as to subject matter and dates requested and unduly burdensome.  The requested information including subject matter and dates after May 18, 2014 is irrelevant to the claims at issue in this case and not meant to lead to the discovery of admissible information.

Wesley Medical Center Emergency Department policies and procedures are the same as Wesley Woodlawn Hospital and ER policies and procedures. See response to Request No. 7.

9.     The following policies, procedures, protocols or guidelines and documents in the emergency department of Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital) relating thereto as they existed on May 15, 2014, and any amendment since that date:

a.     Electronic record keeping;

b.     Recognition, diagnoses, management and treatment of high blood pressure;

c.     Recognition, diagnoses, management and treatment of pseudo tumor cerebri;

d.     Recognition, diagnoses, management and treatment for loss of vision associated with pseudo tumor cerebri;

e.     Recognition, diagnoses, management and treatment for loss of vision associated with high blood pressure;

g.     Discharge criteria applicable to emergency department patients with diagnosis of pseudo tumor cerebri; and

   h.  Discharge criteria applicable to emergency department patients with

     high blood pressure.

**RESPONSE:   Objection.   The term "Electronic record keeping" is vague and ambiguous and is not able to be narrowed through search terms, as there are many policies that speak to documentation in the electronic medical record (EMR).  Notwithstanding, Wesley produces the following policies that speak specifically to documentation in the (EMR):**

- **Interdisciplinary Computerized Patient Care Documentation produced at Bates No. W0212;**
- **Medical Record – Addendum/Late Entry/Corrections to the Medical Record produced at Bates No. W0213-W2016;**
- **Patient's Medical Record – The Medical Record produced at Bates No. W0217-W0220.**

**See also, response to request No. 7 which includes search terms from the above requests. See also, Wesley Medical Center Medical Staff Bylaws (2014) at Bates No. W0221-W0380 & Wesley Medical Center Medical Staff Rules & Regulations (2014) produced at Bates No. W0381-W0412.**

   10.  All phone logs, recordings of phone calls, or transcripts of phone calls in your

possession or right of control pertaining to Jenoise M. Callahan from 5:03 p.m. on May 15, 2014

through 10:56 p.m. on May 17, 2014.

**RESPONSE:  Wesley has nothing responsive besides what is documented in the patient's chart or what was provided by Plaintiff and transcribed by counsel's staff as work product.**

   11.  A paper and electronic copy of all audit trails for the medical records of Jenoise

M. Callahan for her admission to the emergency department of Wesley Woodlawn Hospital &

ER (a/k/a Galichia Heart Hospital) from 1:04 p.m. through 5:03 p.m. on May 15, 2014, and for

her admission to the emergency department of Wesley Medical Center from 10:56 p.m. on May

17, 2014 through 5:47 a.m. on May 18, 2014.

**RESPONSE:**

**Objection, the request for "all audit trails" is overbroad and unduly burdensome. See privilege log.**

**Wesley produces the Meditech All Modules Audit Trail for the requested time period only at Bates No. W0413-W0434 and W0436-W0484.**

**Mnemonics from the Meditech Audit Trail for the persons requested for deposition are:**

| | |
|---|---|
| **Dr. Scott Bledsoe:** | **PBLEDSCA** |
| **Dr. Kent Potter:** | **PPOTTKEM** |
| **Dr. Daniel Morgan:** | **PMORDA** |
| **Dr. Wes  Kirk:** | **PKIRKWED** |
| **Dr. Jagannadha Avasarala:** | **PAVASJAG** |
| **Dr. Raymond Grundmeyer:** | **PGRUNRAW** |
| **Brandelein Stefonek, RN:** | **ENUR.BMS** |
| **David Lawson, RN:** | **ENUR.DLL1** |
| **Ashley Snyder, RN:** | **ENUR.AS1** |
| **Rhiannon Zerbe, RN:** | **ENUR.RGZ1** |
| **Twyla Kreiner, RN:** | **WNUR.TMK** |
| **Sheri Dean, RN:** | **WNUR.SLD6** |
| **Katie Casner, RN:** | **WNUR.KAC1** |
| **Michelle Reed, RN:** | **WNUR.MCR1** |

**See also HPF Audit Trail for the requested time period only produced at Bates No. W0435 and W0485.**

12.    Schedules for Brandelein Stefonek, RN, Ashley Snyder, RN, David Lawson, RN, and Rhiannon Zerbe, RN, who were on duty May 15, 2014 at Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital), and cared for Jenoise M. Callahan.

**RESPONSE:  See Response to Request No. 4.**

13.    A diagram of the emergency department of Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital) as it existed on May 15, 2014.

**RESPONSE:  See Floor Plan produced at Bates No. W0486.**

14.    All documents identified in your responses to Plaintiff's Interrogatories.

**RESPONSE:  See documents produced herein.**

15.     All notes of hospital personnel referencing conversations between Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital) personnel or any physician and Jenoise M. Callahan, Jim Callahan or Julie Hertzler.

**RESPONSE:  Objection, the request seeks documents that meet the definition of "peer review" or "risk management" functions and Wesley asserts the peer review privileges as provided in K.S.A. 65-4915 and risk management privileges in K.S.A. 65-4925. (See privilege log).**

**See the Wesley Medical Records for Jenoise Callahan where conversations may be described.  Wesley has no other responsive documents that are not protected by privileges.**

16.     All notes of hospital personnel referencing conversations between Wesley Medical Center personnel or any physician and Jenoise M. Callahan, Jim Callahan or Julie Hertzler.

**RESPONSE:  Objection, the request seeks documents that meet the definition of "peer review" or "risk management" functions and Wesley asserts the peer review privileges as provided in K.S.A. 65-4915 and risk management privileges in K.S.A. 65-4925. (See privilege log).**

**See the Wesley Medical Records for Jenoise Callahan where conversations may be described.  Wesley has no other responsive documents that are not protected by privileges.**

17.     All documents within your custody or right of control pertaining to Jenoise M. Callahan's May 15, 2014, emergency department care, including but not limited to:

    a.      Incident reports;

    b.      Written or otherwise recorded statements made by personnel of Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital);

    c.      Written or otherwise recorded statements made by defendant Scott Bledsoe, M.D. and/or other staff or personnel;

> d.      Any and all reports, statements, memoranda, proceedings, findings and/or other records reviewed by any review committee;
>
> e.      All sentinel event reports created by Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital); and
>
> f.      Any and all reports, statements, memoranda, proceedings, findings and/or other records which in any way pertain to the voicemails left on the cell phone of Jenoise M. Callahan in May of 2014.

**RESPONSE:   Objection, the request seeks documents that meet the definition of "peer review" or "risk management" functions and Wesley asserts the peer review privileges as provided in K.S.A. 65-4915 and risk management privileges in K.S.A. 65-4925. (See privilege log).**

**See the Wesley Medical Records for Jenoise Callahan where conversations may be described.  Wesley has no other responsive documents that are not protected by privileges.**

Respectfully Submitted,

GILLILAND & HAYES, LLC

*/s/Michelle M. Watson*
Michelle M. Watson, #18267
mwatson@gh-ks.com
*Attorney for Wesley Medical Center, LLC*

## WESLEY MEDICAL CENTER'S PRIVILEGE LOG TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION

Wesley Medical Center submits the following privilege log as to documents requested:

### Privileged Document Categories

**I.      Nurse Employment Files:**

**Responsive to**: Plaintiff's 1st RFP, Request No. 1 [requesting "The personnel files of Ashley Snyder, RN, Brandelein Stefonek, RN, David Lawson, RN and Rhiannon Zerbe, RN.]

Note:  Education records from each personnel file are produced for each employee. Wesley is objecting to Rhiannon Zerbe, RN's file being at issue in this case as she provided no patient care and was not on duty on May 15, 2014 when the Plaintiff was seen at Wesley on Woodlawn.  Nurse Zerbe's involvement was merely to receive a phone call from the patient's brother on May 17, 2014 which she documented in the chart.

No personnel file contains any information specific as to Jenoise Callahan or her care and treatment.

a.  **Brandelein Stefonek, RN Personnel File--**(214 total pages)
Note:  Nurse Stefonek has been an employee of Wesley since 2002.  There are many documents that are irrelevant to Plaintiff's claims, have nothing to do with Jenoise Callahan's care and clearly fall under Kansas' peer review and risk management privileges.  There are no documents regarding Jenoise Callahan.

1.  Confidentiality Agreement (2015)
2.  Background Investigation Results (2015)
3.  Employee Record Review Results (2014)
4.  Job Description for Department or Unit Director (2012)
5.  New Employee Orientation Data Sheet (Wesley) (2002)
6.  Clinical Staff Orientation Checklist (2012)
7.  Department Orientation Checklist (2012)
8.  Competency Verification (2013)
9.  Board of Nursing Verification (2013)
10. Performance Management Evaluation (June, 2014)
11. Performance Management Evaluation (December, 2013)
12. Position Description and Performance Appraisal (March, 2012)
13. Job Application/Resume for RN Position at Galicia Campus (August, 2013)
14. Job Application to Wesley Med. Ctr. (2002)
15. Notes of Web Interview (2002)
16. Resume (Undated)
17. Employment Offer with Salary Amount for Staff Nurse at WMC (2002)
18. Confidentiality & Security Agreement (2006)
19. HR & Company Policies Acknowledgment (2008)
20. Background Screening and Verification of Work History (2002)
21. US I-9 Form (2014)
22. Confidentiality & Security Agreement (2015)
23. Background Check of Public Records, Sanctions, Education & Employment History (2015)
24. Employee Record Review Checklist (2014)
25. Job Description- Department Director (October, 2012)
26. New Employee Orientation Data Sheet (2002)
27. Orientation Checklist (2012)
28. Department Orientation Checklist (2012)
29. Certification & License Verification (2014)
30. Yearly Performance Evaluation (June 13, 2014, 2013, 2011, 2012)

31. Copies of Certifications 2011-2016
32. Orientation Evaluation & Feedback
33. Service Standards (2012)
34. Safety Quiz (2012)
35. Acknowledgement of Hospital Policies (2002 & 2012)
36. Employee Information Sheet (Including Social Security Number, Address, Bank Account) (2002)
37. Nurse License Copy
38. Application with Interviewer Notes (2002)
39. Email re: New Hire (2002)
40. Shining Star Award (2012)
41. Corresp. re: Education Level Required for Nurse Managers (2013)
42. Position Description/Performance Appraisal (2010)
43. Annual Performance Appraisal (2010)
44. Annual Performance Appraisal (2009)
45. Annual Performance Appraisal (2008)
46. Annual Performance Appraisal (2007)
47. Annual Performance Appraisal (2006)
48. Annual Performance Appraisal (2005)
49. Employee Counseling re: Professional Conduct (2007)
50. Employee Counseling re: Attendance (2003-2006)
51. Employee Counseling re: Attendance (2005)
52. Employee Counseling re: Attendance (2004)
53. Employee Counseling re: Attendance (2004)
54. Employee Counseling re: Attendance (2004)
55. Employee Counseling re: Specimen Label (2003)
56. Employee Counseling re: Attendance (2003)
57. License Verification
58. Employee ID Requests

**b.      Ashley Snyder, RN Personnel File** (196 Total Pages)
Note:  Nurse Snyder has been an employee of Wesley since 2012.  There are many documents that are irrelevant to Plaintiff's claims, have nothing to do with Jenoise Callahan's care and clearly fall under Kansas' peer review and risk management privileges.  There are no documents regarding Jenoise Callahan.

1.   Education tracking E-form (2015)
2.   Employee Record Review Results (July, 2014)
3.   Job Description for Emergency Services Registered Nurse (2012)
4.   Certification Cards
5.   Competency Verification
6.   Board of Nursing Verification (2012)
7.   New Employee Orientation Data Sheet (2012)
8.   Clinical Staff Orientation Checklist (2012)
9.   Performance Management Evaluation (May, 2014) (December, 2013) (December, 2012)

10. Background Check (October, 2012)
11. Board of Nursing Verification (2014)
12. Employee Record Review Results (2014)
13. Job Application/Resume with Interviewer Notes (2012)
14. Employment Status Form w/SSN & Rate of Pay (2012)
15. Confidentiality Agreement (2012)
16. Acknowledgement of Policies & Expectations (2012)
17. I-9 Form (2012)
18. Continuing Education Certificates
19. Licenses
20. Certificates of Training (2012-2016)
21. Skills Validation & Competency Assessment Tool (2015)
22. Defibrillator Competency Review (2014)
23. Staff Meeting Focus Quizzes (November, 2014, 2013; December, 2013; April, 2014)
24. Wesley 2014 Charter
25. Respect in the Work Place Presentation Acknowledgement
26. August- October 2013 Work Schedules
27. Health Stream Course Assignment Sheet (2013)
28. Job Application w/Interviewer Notes (2012)
29. Employee Record Review (2015)
30. License Verification (2016)
31. Annual Performance Appraisal (2014-2015)
32. Position Description/Performance Appraisal (June/July, 2015)
33. Position Description/Performance Appraisal (Undated)
34. Compensation Changes (2015)
35. License Verification (2012)
36. GHH 4 P's of Rounding Acknowledgement (2012)
37. GHH Service Standards Acknowledgement (2012)
38. GHH Dress Code Acknowledgement (2012)
39. GHH Safety Issues Quiz (2012)
40. GHH Employee Information Sheet (2012)
41. GHH Emergency Contact (2012)
42. GHH Parking Permit Authorization (2012)
43. Email from HR to Nurses re: Welcoming New Member (2012)
44. Employee Data Change Request (2016)
45. Education Tracking E-Form (2015)
46. Application with Interviewer Notes (2012)
47. Employment Status with SSN & Rate of Pay (2012)
48. Confidentiality and Security Agreement (2012)
49. HR/Company Policies & Procedures Acknowledgment (2012)
50. GHH Hospital Expectations Acknowledgement (2012)
51. Employee Data Change Request (2015)
52. Compensation Worksheet (2012)
53. Letter from HR to A. Snyder re: Compensation Changes (2013)

**c.    David Lawson Personnel File** (234 Total Pages)

Note:  Nurse Lawson was an employee of Galichia Heart Hospital ("GHH") prior to its merger with Wesley in February, 2012.  Documents generated during his time at GHH are designated below by "GHH."  In addition to privilege objections, Wesley objects to producing documents of another entity regarding this employee.  There are many documents that are irrelevant to Plaintiff's claims, have nothing to do with Jenoise Callahan's care and clearly fall under Kansas' peer review and risk management privileges.  There are no documents regarding Jenoise Callahan.

1.  Job Application (2011)
2.  Employment Status with SSN & Rate of Pay (2011)
3.  Confidentiality and Security Agreement (2011)
4.  I-9 Form w/SSN & DOB (2007 & 2014)
5.  Equal Employment Opportunity Record
6.  Background Check (2011)
7.  Corrective Action Form -Absences (2011)
8.  Certification Cards
9.  Credentials Update E-Form (2015)
10. Employee Record Review (2014)
11. Job Description/Annual Performance Appraisal (Blank-2012)
12. Acknowledgement of Receipt of Job Description (2011)
13. Competencies Verification (May, 2014)
14. License Verification (2012)
15. Emergency Nurse Competency Exam (2011)
16. Yearly Performance Evaluation (2013 & 2014)
17. Sullivan Group Web Training Certificates (2013-2016)
18. Certification Cards & License
19. EKG Skills Checklist (2012)
20. Course Certificates
21. Competency Checklists (2013 & 2014)
22. Staff Meeting Quiz (2014 & 2015)
23. Triage Competency Exam
24. Nurse Education Form (2013)
25. Defibrillator Competency Review (2014)
26. Communication & Respect Policy (2013)
27. GHH 5 Level Triage Annual Competency Evaluation (2011)
28. GHH Resource Nurse Expectations (2008)
29. GHH EMTALA Staff Competency (2006)
30. GHH Topic Quizzes (2007)
31. GHH Continuing Education Certificates (2006)
32. GHH Vaccine Administration Record (2006)
33. GHH Time Maintenance Forms (2006 -2007)
34. Application & Resume for Assistant Nurse Manager (2013)
35. Emails between D. Lawson & Supervisors regarding Equipment & Staffing (June & July 2012)

36. GHH Chest Pain Metrics
37. Emails between K. Wagner, J. Ensey & D. Lawson re: Parallel Patients (July 2012)
38. GHH Yearly Performance Evaluation (2011)
39. GHH Corrective Action Form re: Absences (2011)
40. GHH Email from D. Lawson to ED Staff re: Vital Signs & Summary of Care (September, 2011)
41. GHH Yearly Performance Evaluation (2010)
42. GHH Recognition Card re: Happy with Patient Care (2009)
43. GHH Personal Performance Record re: Employee Health Issue (2009)
44. GHH Acknowledgement of Expectations of Nurses (2009)
45. GHH Yearly Performance Evaluation (2008)
46. GHH Yearly Performance (Self Evaluation)(2008)
47. GHH Thank You Card re: Patient Care (2007)
48. GHH ER Expectations (2006)
49. GHH Performance Appraisal (2006)
50. GHH Emergency Services Interview Form (2006)
51. GHH Application for Employment (includes SSN & DOB) (2006)
52. GHH Release Authorization (with Application) (2006)
53. GHH Performance Appraisal (2006)
54. GHH Complaint About Another Employee's Behavior Drafted by D. Lawson (2007)

**Privileges for the above documents:** *See* K.S.A. 65-4915(a)(3)(D), (J), (K); K.S.A. 65-4925. Wesley also asserts the confidential nature of the medical, financial and personal information contained in the files.

II.   **Dr. Scott Bledsoe's Credentialing file:** (As of September, 2016)
**Responsive to:** Plaintiff's 1st RFP, Request No. 2 [requesting "personnel file" "contract of employment" and "privileges file"]

*Dr. Bledsoe has been a member of Wesley's Medical Staff since 2009. There are many documents that are irrelevant to Plaintiff's claims, have nothing to do with Jenoise Callahan's care and clearly fall under Kansas' peer review and risk management privileges.

Initial Application File (07/2009) (70 pages)
1. Pre-Application
2. Application to Medical Staff
   a. References
   b. Malpractice history
   c. Personal health history
   d. License actions
3. Medical Staff Review forms and recommendations

4. CV of Bledsoe
5. Physician Information Verification Report
6. Reference Forms and Ratings
7. Privileges Verification
8. Board Results
9. Copies of License
10. OIG exclusion database results

**Privilege:** *See* K.S.A. 65-4915(a)(3)(D), (I), (J); NPDB confidentiality: 45 C.F.R. 60.13.

Privileges File (10/2009) (8 pages)
   11. Application for Privileges

**Privilege:** *See* K.S.A. 65-4915(a)(3)(D), (I), (J)

Reappointment File  (08/2010) (8 pages)
   12. Application for Reappointment to Medical Staff
      Requests information on:
         Malpractice claims, lawsuits
         Termination of insurance status
         Termination of privileges or medical staff
         Denial of privileges
         Licensure actions
         Federal program sanctions

**Privileges**:  *See* K.S.A. 65-4915(a)(3)(D), (I), (J);

Re-credentialing Request for Reconsideration File (11/2012) (69 pages)
   13. Correspondence re: approval
   14. Department Review and Committee Approval form
   15. Reappointment Profile (Quality Data Collection)
   16. Clinical Risk Profile
         Contains patient names and information, peer review, committee conclusions and opinions
   17. Correspondence re: Reappointment file
   18. Summary of findings from reappointment file
   19. CME Attestation
   20. Communicable Disease form
   21. Confidentiality and Security Agreement
   22. Provider Signature form
   23. Case /Activity List
   24. Photograph

25. Reflex Testing forms
26. Certifications
27. Delineation of Privilege forms
28. WMC Addendum

**Privileges**:  *See* K.S.A. 65-4915(a)(3)(D), (I), (J);

Ongoing Professional Practice Evaluation File (11/2013) (6)
    29. Contains information regarding:  Evaluation of Quality and Risk Parameters, Patient Care Indexes, Results and Comparisons, Procedure Counts
    30. Correspondence re: same from Chief Medical Officer to Dr. Bledsoe

**Privileges:** *See* K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K), (L)

Re-credentialing Request for Reconsideration File (07/2014-09/2014) (26 pages)
    31. Data Collection form
    32. Personal References
    33. Malpractice claims, lawsuits
    34. Insurance status
    35. Privileges on other medical staffs
    36. Privileges status
    37. Licensure actions
    38. Federal programs
    39. Copy of Driver's License
    40. Certificate from Board of Family Medicine
    41. Summary of findings from reappointment file
    42. CME Attestation
    43. Communicable Disease form
    44. Confidentiality and Security Agreement
    45. Provider Signature form
    46. Case /Activity List
    47. Photograph
    48. Reflex Testing forms
    49. Certifications
    50. Delineation of Privilege forms
    51. WMC Addendum

**Privilege:**  *See* K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K), (L)

Peer Review Correspondence File (09/18/2014) (1 page)
52. Letter to Dr. Bledsoe re: Peer Review  for Jenoise Callahan (marked Personal and Confidential)

Wesley objects to providing additional details as further information may result in waiving the privilege.

**Privilege:** *See* K.S.A. 65-4915(a)(3)(A), (B), (D), (E), (I), (J), (K)

Re-Credentialing Request for Reconsideration File (9/2014-11/2014) (26 pages)
53. Form for Request for Reappointment
54. National Practitioner Data Bank Query Results
55. Kansas Board of Healing Arts Profile Search Results
56. OIG Exclusion Search Results
57. DEA Number Data file
58. ABMS Board Certification Profile
59. Registered Offender Search Result

**Privilege:** *See* K.S.A. 65-4915(a)(3)(D), (I), (J); NPDB confidentiality: 45 C.F.R. 60.13.

Reapplication and Ongoing Professional Practice Evaluation File (11/2014) (15 pages)
60. Department Review and Committee Approval Form
61. Reappointment Profile with Evaluation of Quality and Risk Parameters
62. Clinical Risk Profile  (Contains Patient Information and Peer Review, Committee Conclusions and opinions, Patient Care Indexes, Results and Comparisons with analysis of statistical data regarding patient outcomes, core measures and physician quality comparisons, Procedure Counts)

**Privilege**: See K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K), (L)

Ongoing Professional Practice Evaluation File (05/2015) (6 pages)
63. Correspondence from Chief Medical Officer re: OPPE
64. Form--Contains: Evaluation of Quality and Risk Parameters, Patient Care Indexes, Results and Comparisons with analysis of statistical data regarding patient outcomes, core measures and physician quality comparisons, Procedure Counts

**Privilege**: See K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K), (L)

Ongoing Professional Practice Evaluation File (11/2015) (6 pages)
65. Correspondence from Chief Medical Officer re: OPPE
66. Form --Includes Evaluation of Quality and Risk Parameters, Patient Care Indexes, Results and Comparisons with analysis of statistical data regarding patient outcomes, core measures and physician quality comparisons, Procedure Counts

**Privilege**: See K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K), (L)

Updated E.D. Privileges File (12/2015) (6 pages)
67. Request for Privileges form (Reflects Numbers of Procedures)
68. List of Approved Privileges
69. Release for Background Check
70. Fax Sheet

**Privilege:** *See* K.S.A. 65-4915(a)(3)(D), (I), (J)

Ongoing Professional Practice Evaluation File (05/2016) (6 pages)
71. Correspondence from Chief Medical Officer re: OPPE
72. Form—Includes Evaluation of Quality and Risk Parameters, Patient Care Indexes, Results and Comparisons with analysis of statistical data regarding patient outcomes, core measures and physician quality comparisons, Procedure Counts

**Privilege**: See K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K), (L)

Wesley also asserts the confidential nature of the medical, financial and personal information contained in all the above files.

III.   **Risk Management File on Jenoise Callahan Peer Review (Paper & Electronic):**
(31 pages)

**Responsive to:** Plaintiff's 1st RFP, Request Nos. 15 [requesting "All notes of hospital personnel referencing conversations between Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital) personnel or any physician and Jenoise M. Callahan, Jim Callahan or Julie Hertzler."]; 16 ["All notes of hospital personnel referencing conversations between Wesley Medical Center personnel or any physician and Jenoise M. Callahan, Jim Callahan or Julie Hertzler."]; 17 ["All documents within your custody or right of control pertaining to Jenoise M. Callahan's May 15, 2014, emergency department care, including but not limited to: a. Incident reports; b. Written or otherwise recorded statements made by personnel of Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital); c. Written or otherwise recorded statements made by defendant Scott Bledsoe, M.D. and/or other staff or personnel; d. Any and all reports,

statements, memoranda, proceedings, findings and/or other records reviewed by any review committee; e.  All sentinel event reports created by Wesley Woodlawn Hospital & ER (a/k/a Galichia Heart Hospital); and f.  Any and all reports, statements, memoranda, proceedings, findings and/or other records which in any way pertain to the voicemails left on the cell phone of Jenoise M. Callahan in May of 2014. "]

**Documents:**

1. Hospital Notification System incident report dated 5/19/2014 (reflecting investigation and mental impressions drafted by risk manager, witness statements, manager reviews and opinions, outcome of nursing and physician peer review)
2. Timeline of care for another patient of Dr. Bledsoe (drafted by risk manager)
3. Correspondence to Dr. Bledsoe from Medical Staff president regarding Executive Committee Meeting (8/5/2014).
4. Correspondence from Chief Medical Officer regarding Peer Review findings (9/19/2014)
5. Correspondence to Dr. Bledsoe from WMC CEO regarding peer review findings (9/18/2014)
6. Physician Peer Review Committee Minutes discussing committee conclusions and opinions  (June 19, 2014)
7. Timeline of care of Jenoise Callahan drafted by Risk Manager based on medical record to assist with peer review (undated)
8. Minutes of Family Medicine Executive Committee discussing peer review matter including summary of witness statements, committee conclusions and opinions (July 11, 2014)
9. Document to Risk Manager regarding care of Jenoise Callahan and Peer Review committee conclusions and opinions (October 29, 2014) [*Further identification of this document would waive peer review privilege]
10. WMC Medical Staff Executive Session regarding Jenoise Callahan and Peer Review committee conclusions and opinions  (9/2/2014)
11. WMC Medical Staff Executive Session regarding Jenoise Callahan and Peer Review and discussing witness statements, committee conclusions and opinions (8/5/2014)
12. Nursing Peer Review Committee roster, list of patients discussed (Callahan and one other patient), employees involved (some unrelated to Callahan) and committee decisions (some unrelated to Callahan) (7/28/2014)
13. Nursing Peer Review Committee Agenda  with 2014 nursing peer review process outline (7/28/2014)
14. Correspondence to Brandy Stefonek regarding invitation to attend Nursing Peer Review Committee (7/09/2014)
15. Correspondence to Ashley Snyder regarding invitation to attend Nursing Peer Review Committee (7/09/2014)
16. Correspondence to David Lawson regarding invitation to attend Nursing Peer Review Committee (7/09/2014)
17. Correspondence to Ashley Snyder from Emergency Department Director regarding Nursing Peer Review Committee findings (7/28/2014)

18. Correspondence to Brandy Stefonek from Emergency Department Director regarding Nursing Peer Review Committee findings (7/28/2014)
19. Correspondence to David Lawson from Emergency Department Director regarding Nursing Peer Review Committee findings (7/28/2014)
20. Nursing Peer Review Timeline of Care of Jenoise Callahan & statement of peer review issue drafted by Diane Dorsch, Emergency Dept. Clinical Nurse Specialist & Peer Review Officer (July, 2014)
21. Correspondence with Wesley's counsel

**Privileges:** *See* K.S.A. 65-4915(a)(3)(A), (B), (D), (I), (J), (K);(L) 65-4925(a)(1), (2), (4); attorney-client privilege, work-product privilege, see K.S.A. 60-426(a) and 60-226(4)(a)..

## IV.   **Attorney Investigation File:**

**Responsive to:**  Plaintiff's First Requests for Production number 17.

**Documents**:  Notes, memos and correspondence with clients related to attorney investigations and witness interviews of the events related to the care and treatment of Jenoise Callahan.  Further detail would risk a breach of attorney client privilege.  The investigation was performed by attorney in anticipation of litigation.  The documents are also protected by work product privilege as they reflect the mental impressions, strategy and opinions of the attorneys and consultants involved.

**Privilege:**    Attorney-client privilege, work-product privilege, see K.S.A. 60-426(a) and 60-226(4)(a).

Respectfully submitted,

GILLILAND & HAYES, LLC

Michelle M. Watson, #18267
mwatson@gh-ks.com
*Attorneys for Defendant Wesley Medical Center*

## CERTIFICATE OF SERVICE

I do hereby certify that on this 6th _ day of January, 2017 a true and correct copy of the above and foregoing Response to Plaintiff's First Request for Production of Documents to Defendant Wesley Medical Center, LLC was emailed, to the following:

Lynn R. Johnson, #07041          ljohnson@sjblaw.com
David R. Morantz, #22431         dmorantz@sjblaw.com
Paige L. McCreary, #27154        pmccreary@sjblaw.com
SHAMBERG, JOHNSON & BERMAN, CHTD
2600 Grand Boulevard, Ste. 550
Kansas City, MO 64108
*Attorneys for Plaintiff, Jenoise M. Callahan*


Chad Moody, #27141               chad@rodolftodd.com
Dustin A. Bradley, #23663        dustin@rodolftodd.com
RODOLF & TODD
401 S. Boston Ave., Suite 2000
Tulsa, OK 74103
*Attorneys for Defendant, Scott Bledsoe, M.D.*


Rita Noll
Health Care Stabilization Fund


                              */s/ Michelle M. Watson*
                              Michelle M. Watson, #18267