IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JENOISE M. CALLAHAN,**

**Plaintiff,**

v.

**SCOTT BLEDSOE ET AL.,**

**Defendant.**

Case No. 16-CV-2310-JAR-GLR

## MEMORANDUM AND ORDER

Plaintiff Jenoise Callahan filed this action against Defendant Dr. Scott Bledsoe and Wesley Medical Center, LLC (collectively referred to as "Defendants") alleging a medical malpractice claim for failure to properly diagnose and treat her hypertension, intracranial pressure, and increased cerebral spinal fluid pressure, which led to her permanent loss of vision. This matter comes before the Court on Defendants' Joint Motion to Transfer This Action to Wichita, Kansas for Docketing, Maintenance, and Jury Trial (Doc. 40).[1] The motion is fully briefed, and the Court is prepared to rule. For the reasoning explained more fully below, the Court grants Defendants' motion to transfer the trial to Wichita, Kansas. However, the Court denies transfer of the case as to docketing and maintenance.

**I.    Background**

Plaintiff is a citizen and resident of Denver, Colorado. Defendant Wesley Medical Center, LLC ("Wesley Medical") is a Delaware limited liability company that at all relevant times was registered and qualified to do business and conducted business in the state of Kansas. Defendant Wesley Medical at all relevant times owned and operated a medical facility known as

---

[1] Defendants made a demand for designation of Wichita, Kansas as the place for trial in their answers. *See* Doc. 9 at 5; Doc. 13 at 7.

Galichia Heart Hospital or Wesley Woodlawn Hospital and Emergency Room located in Wichita, Kansas.  Defendant Scott Bledsoe ("Dr. Bledsoe") is a physician licensed in the state of Kansas who practices in Wichita, Kansas.  Plaintiff's counsel is located in Kansas City, Missouri.  Defendants' counsel is located in Wichita, Kansas and Tulsa, Oklahoma.

Plaintiff alleges that she was not properly diagnosed and received improper treatment while in Defendant Wesley Medical's emergency room on May 15, 2014.  Defendant Dr. Bledsoe was the attending physician while she was under Defendant Wesley Medical's care.  Plaintiff was re-admitted to Defendant Wesley Medical on May 17-18 where she became blind.

## II.     Legal Standard

Defendants request the case be transferred to the Wichita division pursuant to 28 U.S.C. § 1404 and D. Kan. Rule 40.2.  Under Rule 40.2, "[t]he court is not bound by the requests for place of trial.  It may determine the place of trial upon motion or in its discretion."  In this district, when considering a motion for intra-district transfer,[2] courts look to the same factors relevant for change of venue under 28 U.S.C. § 1404.[3]  That statute, § 1404(a), provides in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[4]  Under a § 1404(a) analysis, a district court should consider (1) plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the accessibility of witnesses and other sources of proof; (4)

---

[2] The United States District Court for the District of Kansas is considered one district with three divisions in Kansas City, Topeka, and Wichita.  Thus, a motion for transfer within the District of Kansas is considered intra-district between the divisions.

[3] *Performance Food Group, Inc. v. Ajax Int'l Group, LLC*, No. 12-2525, 2015 WL 5227926, at * 1 (D. Kan. Oct. 22, 2012).

[4] The parties do not challenge that this action could be brought in Wichita.

2

the possibility of obtaining a fair trial; and (5) all other practical considerations that make a trial easy, expeditious and economical.[5]

Although a plaintiff's forum choice "should rarely be disturbed,"[6] the plaintiff's choice of forum receives little deference when, as here, the plaintiff does not reside there.[7] Further, in addition to living outside the chosen forum, "courts have given little weight to a plaintiff's choice of forum where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum."[8] The party seeking to transfer the case has the burden of proving that the existing forum is inconvenient.[9]

### III. Discussion

Defendants move for an intra-district change of venue from the Kansas City division to the Wichita division of the entire case. The Court will not grant Defendants' request to transfer the entire case to the Wichita division. For purposes of docketing, all filings are done electronically, so it does not matter whether the case is considered in Kansas City or Wichita.

---

[5] *Lopez-Aguirre v. Bd. of Cnty. Comm'rs of Shawnee Cnty., Kan.*, No. 12-2752-JWL, 2014 WL 853748, at *1 (D. Kan. Mar. 5, 2014); *see also Taher v. Wichita State Univ.*, No. 06-2132-KHV-DJW, 2007 WL 1149143, at *1 (D. Kan. Apr. 18, 2007) (citations omitted).

[6] *Mortg. Research Ctr., LLC v. Flagship Fin. Group, LLC*, No. 16-2253-JAR, 2016 WL 7229259, at * 3 (D. Kan. Dec. 14, 2016).

[7] *See 613 Agro Holdings, LLC v. Renick*, No. 12-245, 2013 WL 1091632, at * 7 (D. Kan. Mar. 15, 2013) (quoting *Benson v. Hawker Beechcraft Corp.*, No. 07-2171, 2007 WL 1834010, at *2 (D. Kan. June 26, 2007); *Menefee v. Zepick*, No. 09-2127-MLB, 2009 WL 1313236, at * 1 (D. Kan. May 12, 2009)). There has been some differences among judges within this district on the exact weight to give to the plaintiff's choice of forum when the plaintiff is not a resident of the chosen forum. *See Spires v. Hosp. Corp. of Am.*, No 06-2137-JWL, 2006 WL 1642701, at *2 (D. Kan. June 8, 2006) (considering the plaintiffs' choice of forum to have equal weight to the other factors, but determining it not "significantly more weighty" than the other factors where the connection to the forum was obscure as to the case and the plaintiff); *Toelkes v. BNSF Ry. Co.*, No. 15-2651-JAR, 2015 WL 7312437, at *4 (D. Kan. Nov. 19, 2015) (considering the factors for convenience of the witness and accessibility of the witnesses and evidence as the primary factors, and treating the plaintiff's choice of forum as neutral); *Tiffany v. Topeka, Kan.*, No. 09-2232-CM, 2009 WL 1683515, at * 1 (D. Kan. June 16, 2009) (stating that "the factor weighs only slightly in favor of plaintiff" when the plaintiff is out of forum). Ultimately, the Court finds Plaintiff's choice of forum is at least a factor to be considered, but it must be given less weight in light of the fact that "the rationale for allowing the plaintiff to dictate the forum evaporates" when the plaintiff lives outside of the forum. *McIntosh v. City of Wichita, Kan.*, No. 14-2402, 2015 WL 1646402, at *2 (D. Kan. Apr. 14, 2015) (citations omitted).

[8] *McIntosh*, 2015 WL 1646402, at * 2.

[9] *Toelkes*, 2015 WL 7312437, at *1 (citing *Lopez-Aguirre*, 2014 WL 853748, at *2).

Further, in this district, most pretrial proceedings in civil cases, including discovery disputes, are conducted by phone. Most pretrial motions in civil cases are decided on the briefing and rarely called for a hearing. Thus, it is inconsequential whether docketing and maintenance is completed in Kansas City. Instead, the Court considers Defendants' request that the trial be set in Wichita. For the reasoning explained more fully below, the Court finds that trial is properly set in the Wichita division.

### A.     Plaintiff's Choice of Forum

Plaintiff has designated Kansas City, Kansas as the place of trial, but she resides in Denver, Colorado.[10] Thus, she is an out-of-forum plaintiff. Plaintiff argues that her choice to designate Kansas City as the place of trial should be given deference because she is blind and needs to travel to Kansas for trial. She admits that this factor "is not as weighty as it would be with residency," but should still be given significant weight based on her disability.[11]

The Court is not persuaded Plaintiff's choice of Kansas City should be afforded great weight. First, Plaintiff must fly from Denver, Colorado to Kansas. Plaintiff may do so through Kansas City or Wichita. Both have sizeable airports, and to the extent that Plaintiff requests this Court take judicial notice of a price difference in the Wichita airport and the Kansas City airport, the Court declines to do so based on the briefing presented. Based on the fact that the underlying cause of action occurred in Wichita, it is clear that Plaintiff and her brother, Jim Callahan, are familiar with Wichita, and it will not be an entirely foreign city for Plaintiff. Second, Wichita and Kansas City, both hotel accommodations and the Courthouse, have facilities that can provide assistance to Plaintiff's needs as a blind woman. The Court does not find that Plaintiff's disability provides reasoning to afford greater deference to her choice of Kansas City for trial.

---

[10] Doc. 1 ¶ 1.

[11] Doc. 44 at 5.

4

Further, the Court gives little weight to this factor because Kansas City has little to no connection to the facts of the underlying cause of action. Upon reading Plaintiff's Complaint, Kansas City is not mentioned a single time, other than serving as the location of Defendant Wesley Medical's registered agent. The allegations of medical malpractice took place entirely in Wichita, Kansas. Thus, this Court finds the nexus to Wichita and lack of connection to Kansas City counsels against affording deference to Plaintiff's choice of trial location.

Plaintiff argues that this Court should follow the analysis in *Nkemakolam v. St. John's Military School*.[12] In *Nkemakolam*, the plaintiffs were out of state residents suing the defendant, who was located in Salina, Kansas, in Kansas City.[13] The defendant wanted the trial moved to Topeka, which was closer to the defendant.[14] The court gave deference to the plaintiffs' choice of forum because the plaintiffs were out of state residents who needed to fly to Kansas and the presence of a large airport made Kansas City more convenient than Topeka.[15] Also, the court found "although Topeka might be marginally more convenient for St. John's and its witnesses, that factor is at least counter-balanced by the loss in convenience to plaintiffs and other witnesses residing outside the state."[16]

The Court finds that this case is distinguishable from *Nkemakolam*. Plaintiff is an out-of-state resident suing Defendants, which are both located in Wichita. While the Court considers Plaintiff's choice of forum, it does not give as much deference as in *Nkemakolam* because Wichita has a sizeable airport with national airlines. Unlike the only marginal convenience to the defendant in *Nkemakolam* for transfer from Kansas City to Topeka, there is a large difference

---

[12] 876 F. Supp. 2d 1240, 1247–48 (D. Kan. 2012).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

in convenience to Defendants to transfer from Kansas City to Wichita.  Defendants are located in Wichita and the distance between Wichita and Kansas City is nearly two hundred miles.  Thus, the key factors that led to the denial of transfer in *Nkemakolam* counsel for transfer in this case.

Ultimately, although this Court finds that Plaintiff's designation of Kansas City as the place for trial should be afforded some weight, this factor weighs little or is neutral given the underlying cause of action has no tie to Kansas City, Defendants are located in Wichita, and Plaintiff can travel to Wichita.

**B.     Convenience And Accessibility of Evidence**

The relative convenience of the forum is a primary consideration in deciding a motion to transfer where plaintiff is out of forum.[17]  Plaintiff's proposed forum must be "substantially inconvenient" to warrant a change in forum.[18]  A proposed forum will be "substantially inconvenient" if all or practically all the witnesses reside in a different forum and traveling to the proposed forum is a substantial burden.[19]  To demonstrate inconvenience, Defendant must: "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, . . . that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary."[20]

---

[17] *McIntosh v. City of Wichita*, *Kan.*, No. 14-2402, 2015 WL 1646402, at *2 (D. Kan. Apr. 14, 2015) (citations omitted).

[18] *Id.*

[19] *Id.*

[20] *Mortg. Research Ctr., LLC v. Flagship Fin. Group, LLC*, No. 16-2253-JAR, 2016 WL 7229259, at * 4 (D. Kan. Dec. 14, 2016) (quoting *Empl'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010)).

Based on the Court's review of the Rule 26 disclosures and interrogatories filed in conjunction with this motion,[21] the Court finds that an overwhelming majority of the witnesses disclosed are located in Wichita.  Plaintiff identified six key fact witnesses located in Wichita or the surrounding area in her supplemental interrogatory answers.[22]  She listed only one witness in the Kansas City metropolitan area, and she listed one witness in the Topeka area.  Several of these witnesses did not have locations listed, but were primarily going to testify as acquaintances who knew Plaintiff's condition prior to May 15, 2014.  Four of the witnesses were out of state, and these witnesses will be required to travel regardless of whether the trial is in Kansas City or Wichita.

Plaintiff's list of material fact witnesses omits the medical care providers involved in the alleged malpractice and subsequent treatment, which are some of the witnesses that will provide the material testimony to the underlying claim.  Defendant Wesley Medical listed ten healthcare providers, and seven of the providers are located in the Wichita area.[23]  One of the providers is in the Kansas City area, and two of the providers are out of state.  Defendant Dr. Bledsoe's list of witnesses is consistent with Defendant Wesley Medical's list.  Thus, taking in consideration the submissions of the parties, the Court finds the overwhelming majority of the witnesses are located in Wichita as opposed to Kansas City.  With particular emphasis on the healthcare providers who will provide the most material testimony, these witnesses are almost exclusively located in Wichita or out of state as opposed to Kansas City.[24]

---

[21] Docs. 41-1, 41-2, 41-3, 44-1

[22] Doc. 41-1 at 20–23.

[23] Doc. 41-2.

[24] Plaintiff makes the argument that much of the material evidence will be in the form of medical records that can easily be presented in Kansas City. Doc. 44 at 6.  However, the Court is not persuaded that this counsels for keeping the trial in Kansas City.  As explained, the witnesses are overwhelmingly in Wichita.  The parties may

Plaintiff makes a particularly unavailing argument that her current treating physicians and unidentified experts will be coming to Kansas from out of state, so the trial should be held in Kansas City to accommodate these witnesses. As out-of-state witnesses, these physicians and experts will bear the burden of travel regardless of whether the trial is in Wichita or Kansas City. The Court does not agree that because witnesses will be coming from out of state, the trial should be held in Kansas City. As the Court has previously explained, to the extent Plaintiff requests the Court take judicial notice of a price difference in flights to Kansas City and Wichita, the Court declines to do so. These out-of-state witnesses may fly to Wichita rather than Kansas City.

While this case is not yet through discovery, most, if not all, of the material witnesses to Plaintiff's treatment have been identified through the initial disclosures and interrogatories. This Court need not defer deciding on this factor until the close of discovery and every witness has been discovered as Plaintiff suggests.[25] The Court is persuaded that it is best to decide the trial location at this stage as opposed to waiting until closer to trial to ease the planning for both parties. More importantly, the Court finds it clear that few identified witnesses are located in Kansas City or surrounding area, and it is not alleged that discovery will disclose more witnesses in the Kansas City area. There is no reason to wait until the close of discovery to decide trial location. Therefore, the Court concludes that Wichita is a more convenient location for trial than Kansas City as the majority of the witnesses to Plaintiff's care reside in the area surrounding Wichita. This factor weighs heavily in support of changing the place of trial to Wichita.

---

present the records anywhere, including in Wichita. Thus, this is seemingly a further reason to have the trial in Wichita.

[25] *See Toelkes v. BNSF Ry. Co.*, No. 15-2651-JAR, 2015 WL 7312437, at *4 (D. Kan. Nov. 19, 2015) ("And although other courts have reasoned otherwise, the Court finds waiting until the parties exchange final witness lists under Rule 26(a)(3)(B)—only 30 days prior to trial—is far too late to reconsider the place of trial and still allow the witnesses and parties to arrange cost-effective travel and lodging arrangements."). *But see E.E.O.C. v. Newman Univ.*, No. 05-2404-KHV, 2006 WL 23566, at *2 (D. Kan. Jan. 4, 2006) (denying motion for determination of place of trial where initial witness lists and Rule 26(a) disclosures had not been exchanged).

## C. Relative Advantages and Obstacles to a Fair Trial

Plaintiff argues that she may not receive a fair trial in Wichita because Defendant Wesley Medical is a local hospital that employs a number of Wichita residents.[26] Plaintiff, therefore, argues Wichita residents are unlikely to award a large judgment against a Wichita employer. However, this Court finds this argument to be speculative as this Court has found that fair trials may be conducted with businesses who have headquarters and employ residents in the place of trial.[27] The Court finds that voir dire will alleviate Plaintiff's concerns about bias in favor of Defendant Wesley Medical and ensure Plaintiff a fair trial. Thus, this factor weighs in favor of transferring to Wichita.

## D. Other Considerations

The Court may consider the "costs in the form of mileage, meals, and hotel expenses" incurred by holding the trial in Kansas City as opposed to Wichita.[28] The Court may also consider the cost of forcing medical practitioners to travel for trial testimony at the expense of time lost treating patients.[29] As the Court demonstrated above, the majority of the witnesses are in Wichita, so the cost of mileage, meals, and hotel would be great if the witnesses were required to travel to Kansas City. Plaintiff and her brother, Jim Callahan, will incur the cost of mileage, meals, and hotel regardless of whether the trial is in Kansas City or Wichita as both are from out of state. This is also true of the other out-of-state treating physicians and experts. Plaintiff has

---

[26] Since the briefing for this motion was initially filed, the Court granted Defendants' Motion and Demand for Jury Trial (Doc. 46) on March 1, 2017. Doc. 71. Otherwise, this factor would have been neutral as the Court would have instead conducted a bench trial.

[27] *See Aramburu v. Boeing Co. et al*, 896 F. Supp. 1063, 1065 (D. Kan. 1995) ("The court rejects the plaintiff's contention that he will have more difficulty finding a fair and impartial jury in Wichita than Topeka. The court is confident that the plaintiff's concerns that Wichita residents will be reluctant to hold against Boeing will be adequately addressed during voir dire of the prospective jurors.").

[28] *Hughes v. Blue Cross & Blue Shield of Kan., Inc.*. No. 12-2339, 2012 WL 3644845, at * 4 (D. Kan. Aug. 24, 2012).

[29] *Spires v. Hosp. Corp. of Am.*, No 06-2137-JWL, 2006 WL 1642701, at *3 (D. Kan. June 8, 2006).

9

demonstrated that only a couple witnesses are from the Kansas City metropolitan area, so these witnesses will incur such costs. However, based on review of the Rule 26 disclosures and interrogatories, it appears the majority of the witnesses will be in Wichita.

Also, the majority of the Wichita witnesses are doctors who would be pulled away from their practices if trial was in Kansas City. The out-of-state treating physicians and experts are going to be pulled away from their practices regardless of whether the trial is in Wichita or Kansas City. There is only one identified doctor, Dr. Whittaker, who is located near Kansas City, so he will be pulled away from his practice if the trial is in Wichita.[30] Ultimately, this weighs in favor of transfer to Wichita.

## III. Conclusion

Based on the arguments presented, the Court is persuaded that it is appropriate to try this case in Wichita, Kansas. Although Plaintiff's designation of Kansas City as the preferred choice for the place of trial is entitled to deference, this factor was ultimately accorded little weight or was neutral given the lack of ties to Kansas City and Plaintiff's ability to travel to Wichita. The balance of the other factors and circumstances surrounding this case override that factor. The majority of the witnesses are from the Wichita area. Plaintiff's counsel is the only real tie the Court can find to Kansas City. Ultimately, this Court finds it will be more convenient to try this case in Wichita.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Joint Motion to Transfer This Action to Wichita, Kansas for Docketing, Maintenance, and Jury Trial (Doc. 40) is **granted in part and denied in part**. The case will not be transferred to Wichita, Kansas for docketing and maintenance. The case will be transferred to Wichita, Kansas for trial.

---

[30] Doc. 41-2 at 2. Plaintiff's interrogatory answers indicate that she received medical care from several doctors in the Kansas City metropolitan area during the five years prior to May 15, 2014. *See* Doc. 41-1 at 7. However, it is unclear whether any of these healthcare providers will be called to testify.

**IT IS SO ORDERED.**

Dated: April 6, 2017

                                                     S/ Julie A. Robinson
                                                     JULIE A. ROBINSON
                                                     UNITED STATES DISTRICT JUDGE